MICHIGAN BANK-MIDWEST v D J REYNAERT, INC

Docket Nos. 92285, 94573, 94574. Submitted November 4, 1987, at Lansing. Decided January 19, 1988.

Michigan Bank-Midwest entered into a $600,000 construction loan with Donald J. Reynaert and G. Alex Monteith which was to be used to construct a restaurant on a site in Albion and was secured by a $600,000 mortgage on the Albion site and a $200,000 second mortgage on a warehouse owned by Reynaert in Detroit. Reynaert and Monteith defaulted on the loan. On January 2, 1985, the bank commenced in Calhoun Circuit Court an action to foreclose the two mortgages, naming Reynaert, his wife, a company owned by him, Monteith and several contractors and material suppliers who were involved in the building of the restaurant on the Albion site as defendants. Reynaert, his wife, his company and Monteith failed to answer the complaint and a default was entered against them. On August 26, 1985, a default judgment of foreclosure was entered against those defendants by the trial court, Paul Nicolich, J. On the same date, Kip D. Anderson, Peter C. Hanley and Elias A. Shaptini filed a motion for intervention, alleging that the Detroit warehouse had been purchased with money advanced to Reynaert pursuant to an oral partnership agreement, that Reynaert lacked authority to mortgage the property for personal debts, and that the mortgage on the warehouse was given without the consent of or notice to the intervenors. The motion to intervene was granted on December 17, 1985, by the trial court, Stanley Everett, J. During this same period of time, litigation relating to the foreclosure of the senior mortgage on the Detroit warehouse was commenced in Wayne Circuit Court. During discovery in the Wayne County action, plaintiff learned that Reynaert and the intervenors had executed two agreements relating to their Detroit warehouse, one of which empowered Reynaert to mortgage that property and the other in

REFERENCES

Am Jur 2d, Costs § 28.
Am Jur 2d, Motions, Rules, and Orders §§ 27, 42, 45.
Am Jur 2d, Parties §§ 167, 168.
For annotations see Index to Annotations under Intervention.

which the intervenors acknowledged that Reynaert was sole titleholder to the property and disavowed any real property interest in the property. On the basis of that disclosure, plaintiff moved to set aside the order of intervention, alleging that the intervenors had perpetrated fraud and misrepresentation on the court and plaintiff by failing to disclose the existence of those agreements at the time of making the motion to intervene. The trial court, Paul Nicolich, J., concluded that the intervenors had misled the court by not revealing the agreements and that the agreements clearly and unambiguously indicated that the intervenors had relinquished all property rights in the warehouse. Accordingly, Judge Nicolich granted plaintiff's motion, set aside the order of intervention and ordered the intervenors to pay costs and reasonable fees. The intervenors moved for reconsideration and an evidentiary hearing on the question of fraud. The motion was denied, the trial court holding that under the circumstances an evidentiary hearing was unnecessary because the fraud on the court was established by the pleadings and the signed agreements. The intervenors appealed.

While these matters relating to the intervention were proceeding, defendant Monteith moved to set aside the default judgment claiming that the default and default judgment had been induced by plaintiff's representations to him that there was sufficient collateral to satisfy the loan obligation and expenses. At the hearing on Monteith's motion, his counsel asked that the default judgment be set aside as to Monteith only and that Monteith be permitted to adjudicate any deficiency judgment. Judge Nicolich set aside the liability for deficiency portion of the default judgment against Monteith. Plaintiff filed a motion for reconsideration, attaching affidavits of various bank employees to the effect that none of them had ever advised Monteith that an attorney was unnecessary or that the bank would not seek a deficiency judgment against him. At an evidentiary hearing the bank official in charge of this loan testified to that effect and Monteith himself eventually admitted that no such statements had been made to him. Judge Nicolich thereafter granted the motion for reconsideration, since there was no evidentiary support for Monteith's motion to set aside the default judgment.

Soon after proceedings had commenced, plaintiff had moved for the appointment of a receiver of the mortgaged properties pursuant to the provisions of the Construction Lien Act. A receiver was appointed. The receiver petitioned the court for permission to complete construction of the restaurant on the

Albion property or sell it. Judge Nicolich entered an order authorizing the receiver to sell the Albion property for not less than $400,000, with the buyer to assume all outstanding obligations owed to the construction lienholders. The Albion property was sold for $400,000. An order confirming the sale was entered by the trial court, James Kingsley, J. Thereafter, on January 13, 1986, Judge Nicolich entered an order accepting the final account of the receiver and discharging him. On February 7, 1986, Judge Kingsley entered an order which reserved the right to adjudicate a deficiency against defendants Reynaert and defendant Monteith. On June 16, 1986, Judge Nicolich concluded that defendants Reynaert and defendant Monteith lacked standing to challenge the foreclosure sale because of the default judgment, that a deficiency was shown at the time the property was sold, and that, therefore, there was no need for post-sale proceedings. Defendants appealed. The appeals were consolidated.

The Court of Appeals *held:*

1. The motion for reconsideration of the motion to intervene on the basis of fraud or misrepresentation is addressed to the discretion of the trial court. While normally an evidentiary hearing is necessary to determine whether the alleged fraud exists, such a hearing is not necessary where, as here, documents signed by the intervenors clearly defeat the alleged factual basis for the intervention and the intervenors at no time deny signing those agreements. Accordingly there was no abuse of discretion.

2. Since the intervenors made a false representation in their motion to intervene and the accompanying affidavits by claiming they had an interest in the property where they did not, the trial court properly imposed costs and reasonable attorney fees.

3. It was not an abuse of discretion for the trial court to consider the motion for reconsideration of the order setting aside the default judgment against Monteith since the veracity of Monteith's pleadings upon which he had sought the order setting aside the default judgment was brought into serious question by the affidavits filed by plaintiff. The motion was properly granted when Monteith admitted that his allegations were untrue.

4. Since plaintiff sought a receiver under the Construction Lien Act, the disposition of the receipts of the sale of the property is governed by the provisions of the Construction Lien Act. That act provides that a court shall adjudicate the right, if any, to a deficiency judgment against a contracting party.

Defendants Reynaert and defendant Monteith are contracting parties within the meaning of that act. Since the act requires the court to adjudicate any deficiency, an evidentiary hearing was mandated.

Affirmed in part, reversed in part and remanded.

1. MOTIONS AND ORDERS — PARTIES — INTERVENTION OF PARTIES — FRAUD — APPEAL.

A decision to set aside an order allowing intervention of a party because of the fraud, misrepresentation or misconduct of that party in securing the intervention order is discretionary with the trial court and will not be disturbed on appeal absent a showing of abuse of discretion (MCR 2.612[C][1][c]).

2. MOTIONS AND ORDERS — SETTING ASIDE PRIOR ORDER — FRAUD — EVIDENTIARY HEARING.

A motion to set aside a prior order of a court on the basis that the order was secured by the fraud or misrepresentation of the opposing party generally will require the trial court to hold an evidentiary hearing to determine whether the alleged fraud exists; however, where the fraud or misrepresentation is clearly demonstrated by a document signed by the party accused of the fraud or misrepresentation, it is not error for the trial court to set aside the prior order without holding an evidentiary hearing (MCR 2.612[C][1][c]).

3. MOTIONS AND ORDERS — PLEADING — MISREPRESENTATIONS — COSTS — ATTORNEY FEES.

A party who files a motion to intervene in a lawsuit may properly be ordered to pay costs and attorney fees to a party who contested the intervention where the motion for intervention is ultimately denied because the affidavit accompanying the motion to intervene contained a fraudulent misrepresentation of the facts necessary to justify the granting of an order to have a right of intervention (MCR 2.113[A], 2.114).

4. MOTIONS AND ORDERS — REHEARING — COURT RULES.

The court rule regarding motions for rehearing or reconsideration does not restrict the discretion of the trial judge to reconsider motions where he later determines that he or his predecessor made a serious error, based on an intervening change in the law or otherwise (MCR 2.119[F][3]).

5. MOTIONS AND ORDERS — REHEARING — EXERCISE OF DISCRETION.

It is not an abuse of discretion for a trial court to reconsider a motion to set aside a default judgment where affidavits are presented which seriously call into question the factual allega-

tions contained in the affidavit which was filed in support of the motion to set aside the default judgment.

6. Mechanics' Liens — Sale of Property — Deficiency Judgments — Contracting Party.

   A circuit court following the sale of real property being held by a receiver appointed pursuant to the provisions of the Construction Lien Act is required to adjudicate the right, if any, to a deficiency judgment against any contracting party; any person who enters into contracts with contractors for improvements upon the property is a contracting party within the meaning of the Construction Lien Act (MCL 570.1124[1]; MSA 26.316[124][1]).

*Curtis, Davidson & Curtis, P.C.* (by *Robert M. Craft* and *Phillip J. Curtis*), for plaintiff.

*Gandelot, Stoepker & Dickson, P.C.* (by *Timothy A. Stoepker*), for defendants Reynaert.

*Alan R. Miller, P.C.* (by *John J. Schrot, Jr.*), for defendant Monteith.

*Rockwell & Kotz, P.C.* (by *Jerry R. Hamling*), for intervenors.

Before: Cynar, P.J., and Sawyer and J. A. Gillis,* JJ.

Cynar, P.J. In these consolidated cases, defendants, D. J. Reynaert, Inc., Donald J. and Patricia K. Reynaert, and G. Alex Monteith, and intervenors, Kip D. Anderson, Peter C. Hanley and Elias A. Shaptini, appeal as of right from a judgment of foreclosure by default entered on August 26, 1985, by Calhoun Circuit Judge Paul Nicolich. We affirm in part, reverse in part and remand for an evidentiary hearing. For purposes of clarity, separate facts will be summarized for each of the cases.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

*Docket No. 92285:*

Intervenors allege that sometime during 1982 they entered into an oral partnership agreement with Donald Reynaert, wherein the intervenors (and possibly Michael J. Kelly, not a party to the instant suit) agreed to contribute funds for the purpose of buying and selling real estate for profit. Pursuant to this alleged oral agreement, the intervenors contributed $6,781 each toward the purchase of the Warnock Spring Warehouse Building located at 227 Iron Street, Detroit, Michigan. The intervenors did not execute and file a formal partnership agreement. However, they did file a certificate of copartnership with the Wayne County Clerk's office.

On December 13, 1982, Reynaert, Kelly and the three intervenors entered into a written "memorandum agreement" whereby each of these individuals acquired a one-fifth interest in the warehouse property and its liabilities. Reynaert was empowered to perform all acts necessary and incidental to the purchase and management of the warehouse, including making, executing, acknowledging, mortgaging and insuring the property. Reynaert was not empowered to sell or transfer the property.

Reynaert executed a valid first mortgage for $53,000 on December 14, 1982, with Michigan National Bank of Detroit.

The next day, December 15, 1982, Reynaert, Kelly and the intervenors executed an amendment to the memorandum agreement. The amendment read as follows:

> 1. We acknowledge that Donald J. Reynaert is the sole title holder to the property described in

the Memorandum Agreement and further assert no real property interest in the described property.

2. We recognize the validity of that Mortgage executed December 14, 1982 between Donald J. Reynaert as Mortgagor and Michigan National Bank of Detroit as Mortgagee and hereby waive any rights to challenge the Mortgage.

3. We acknowledge that the above Mortgage is a valid first lien upon the property.

4. We hereby subordinate any rights which we may have in the subject property to the rights of Michigan National Bank of Detroit as contained in the Mortgage.

Afterwards, on July 3, 1984, Reynaert and Monteith, as partners, entered into a $600,000 construction loan agreement with plaintiff, Michigan Bank-Midwest. The loan was secured by a real estate mortgage on an Albion, Michigan, restaurant site for $600,000 and a real estate mortgage on the Detroit warehouse in the amount of $200,000. Intervenors Anderson, Hanley and Shaptini had no knowledge of nor did they consent to the $200,000 mortgage.

Reynaert and Monteith defaulted on the construction loan and, on January 2, 1985, plaintiff commenced foreclosure on the two mortgaged properties. Subsequently, on August 26, 1985, intervenors filed a motion to intervene, alleging inter alia that, pursuant to an oral partnership agreement, intervenors advanced money to Reynaert for the purchase of the warehouse and that Reynaert had mortgaged the property without the partnership's authority.

That same day (August 26, 1985), Judge Paul Nicolich entered a default judgment of foreclosure against Reynaert and Monteith.

Thereafter, on December 17, 1985, Judge Stanley Everett entered an order allowing intervention

and restraining disposition of the warehouse. While the instant action was pending, Reynaert defaulted on the first mortgage on the warehouse, and, consequently, Michigan National Bank sought foreclosure by advertisement.

Intervenors filed an action in Wayne Circuit Court and obtained an order restraining Michigan National Bank from disposing of the warehouse property until the intervenors' equitable rights were adjudicated and the title quieted.

In a deposition connected with the Wayne Circuit Court action, the existence of the memorandum agreement and amendment was revealed to plaintiff. Based on this revelation, on February 21, 1986, plaintiff filed a motion to set aside the order of intervention under MCR 2.612(C)(1)(c), alleging that intervenors had perpetrated fraud and misrepresentation upon the court and plaintiff by failing to disclose the existence of the memorandum agreement and the amendment thereto.

Plaintiff's motion was heard on March 17, 1986, before Judge Nicolich. At the hearing, Judge Nicolich concluded that intervenors had misled the court by not revealing the memorandum agreement and its amendment. The judge found that the language of the amendment was clear and unambiguous as to the fact that the intervenors had relinquished any property rights to the warehouse. Accordingly, he granted plaintiff's motion and imposed costs and reasonable attorney fees. An order setting aside the intervention was entered on April 14, 1986.

Intervenors moved for reconsideration on April 18, 1986, seeking an evidentiary hearing on plaintiff's fraud claim. Judge Nicolich denied the motion on May 16, 1986, by way of a written opinion. Judge Nicolich recognized that, when a party alleges fraud on the court, an evidentiary hearing is

normally necessary to determine whether such fraud exists. However, the judge concluded that a hearing was unnecessary because his decision was based on the existence of the memorandum agreement and its amendment. Intervenors had not denied that they executed these documents. Further, in reaffirming his earlier decision, Judge Nicolich stated:

> The basis of this Court's finding that fraud or misrepresentation was perpetrated on this Court was the withholding of such evidence of a material fact, of which, had the Court been made aware of this document's existence and its contents, the Court would not have allowed such intervention. The document clearly speaks for itself; is clear and unambiguous; and, in this Court's opinion, does not assert any rights by the movants on the Wayne County property against the Mortgagee.

On June 17, 1986, Judge Nicolich entered an order denying intervenors' motion for reconsideration and awarded costs, expenses and reasonable attorney fees incurred by plaintiff in responding to the intervention motion in the amount of $2,853.50. The instant appeal followed. On September 26, 1986, this Court consolidated this appeal with the other two appeals considered herein.

*Docket No. 94573:*

As previously indicated, a judgment of foreclosure was entered on August 26, 1985, against Reynaert and Monteith. On November 4, 1985, Monteith moved to set aside the default judgment pursuant to MCR 2.603(D) and 2.612(B) and (C). In the motion, Monteith alleged that the judgment was procured by fraud, mistake and other misconduct on the part of plaintiff. Specifically, Monteith averred that he did not retain counsel and defend

against the foreclosure due to plaintiff's representation that such action was unnecessary since defendants had sufficient collateral to satisfy the loan obligation and all attendant expenses. In addition, Monteith averred that plaintiff told him that it would pursue only Reynaert should a deficiency exist after the disposal of the mortgaged properties. Monteith's motion was accompanied by an affidavit which contained the same averments as those alleged in his motion.

Some of the averments in Monteith's motion included the following: (1) plaintiff failed to avail itself of the collateral in a timely manner; (2) plaintiff failed to dispose appropriately of the collateral; and (3) substantial defects and irregularities existed in the default proceedings and the default was taken without notice.

The motion was heard on November 25, 1985, before Judge Nicolich. At the hearing, Monteith's counsel asked that the default judgment be set aside only as to Monteith and that Monteith be permitted to adjudicate any deficiency judgment. Monteith did not request a stay of the intended foreclosure sale. The court took the motion under advisement.

On December 3, 1985, Judge Nicolich issued a written opinion in which he set aside the default judgment as to Monteith but only as to the deficiency portion of that judgment. In the opinion, the court also ruled that the proposed foreclosure sale could proceed and that Monteith could file an answer to plaintiff's complaint for foreclosure and a counterclaim against plaintiff.

The order granting Monteith's motion was entered on January 3, 1986. The same day, plaintiff filed a motion for reconsideration. Attached to the motion were four affidavits, three from employees of plaintiff's commercial loan department and one

from plaintiff's counsel. The affidavits indicated that none of plaintiff's employees had made any representations to Monteith that plaintiff bank would not proceed against him should a deficiency result from the foreclosure nor had they advised Monteith not to retain legal counsel.

An evidentiary hearing on plaintiff's motion was held before Judge Nicolich on April 7, 1986. At the hearing, Paul Sowards, vice-president of commercial loans with Michigan National Bank-Mid Michigan, testified that he was the loan officer who handled the construction loan taken out by Monteith and Reynaert. Sowards essentially denied that he or anyone associated with plaintiff bank had advised Monteith not to retain counsel or that the bank would not hold him responsible for any deficiency resulting from the foreclosure sale. Finally, Sowards also denied ever telling Monteith that there was sufficient collateral to satisfy any obligations still owing under the loan agreement.

Monteith also testified. He stated that he never had any discussion with Sowards concerning the retention of counsel. In fact, Monteith admitted that no one associated with the bank told him not to obtain an attorney. He also admitted that he was told that the bank would proceed against him if a deficiency resulted from the foreclosure. Finally, Monteith admitted that Sowards never represented to him that there was sufficient collateral to preclude any deficiency.

Following the testimony, Judge Nicolich issued his opinion from the bench. Based on the testimony taken at the hearing and plaintiff's affidavits from its employees and counsel, the judge concluded that there was no evidentiary support for the averments in Monteith's affidavit attached to his motion to set aside the default judgment. Consequently, plaintiff's motion to reinstate the de-

fault judgment was granted. An order incorporating the court's oral ruling was entered on May 12, 1986.

Subsequently, on July 23, 1986, Monteith moved for reconsideration, which was denied on July 28, 1986. On the same day, the court also denied Monteith's motion to compel an evidentiary hearing or trial to determine the amount of the deficiency, if any, resulting from the foreclosure sale. Monteith, thereafter, appealed to this Court.

*Docket No. 94574:*

As noted, plaintiff filed its complaint for foreclosure on January 2, 1985. On March 3, 1985, after Monteith and Reynaert failed to file their answers within the prescribed time provided by the court rules, plaintiff filed an affidavit of default. On the same day, and pursuant to plaintiff's motion, Judge Nicolich entered an order appointing Julius Hoffman as receiver of the mortgaged properties. As receiver, Hoffman was empowered to collect the revenues from the operation of the properties and to apply the funds to the maintenance and operation of the properties. On April 18, 1985, Hoffman petitioned the court for permission to complete construction of the restaurant facilities on the Albion property or to sell it.

Judge Nicolich entered an order on April 29, 1985, authorizing Hoffman to sell the Albion property at a private sale for cash of not less than $400,000. The buyer was to assume all outstanding obligations owed to the construction lienholders. No redemption period was provided. The Albion property, in its uncompleted state, was valued at $347,000.

On July 3, 1985, counsel for D. J. Reynaert, Inc., and the Reynaerts filed an appearance. These defendants did not attempt to set aside the default

judgment once it had been entered on August 26, 1985.

Pursuant to the April 29, 1985, order, Hoffman sold the Albion property on December 20, 1985, to Steakhouses, Inc., for $400,000. An order confirming the sale was entered the same day by Judge James Kingsley. On January 13, 1986, Judge Nicolich entered an order allowing the receiver's final account and discharge. On February 7, 1986, Judge Kingsley entered an order which reserved the right to adjudicate a deficiency against Reynaert and Monteith.

After a hearing held on June 16, 1986, Judge Nicolich concluded that, pursuant to MCR 2.603, defendants Reynaert and defendant Monteith lacked standing to challenge the foreclosure sale because of the default judgment. He also found the appointment and conduct of the receiver to be proper. Finally, the judge ruled that a deficiency was shown at the time the property was sold and, thus, was not subject to determination through post-sale proceedings. Defendants appealed.

In Docket No. 92285, intervenors raise two issues. First, intervenors allege an abuse of discretion by the trial judge when he granted plaintiff's motion to set aside the intervention, because the judge's finding that intervenors had no interest in the warehouse property was against the great weight of the evidence and the judge should have conducted an evidentiary hearing to determine whether plaintiff's claim of fraud and misrepresentation by defendants was true. We disagree.

Plaintiff sought to set aside the intervention order pursuant to MCR 2.612(C)(1)(c) [fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of the adverse party]. A trial court's decision based on this court rule is discretionary and will not be disturbed absent an abuse of discretion.

*Huber v Frankenmuth Mutual Ins Co,* 160 Mich App 568, 576; 408 NW2d 505 (1987).

We cannot conclude that the trial judge abused his discretion in setting aside the intervention. The motion to intervene was filed on August 26, 1985. In it, intervenors averred that an oral partnership existed between Reynaert and intervenors and that the property was purchased with partnership funds to be held by Reynaert and his wife in trust for the partnership. Initially, when the court granted the motion to intervene, the court did not have knowledge of the December 15, 1982, amendment to the December 13, 1982, memorandum agreement. The amendment clearly indicated that intervenors were relinquishing any interests they may have to the warehouse property and that Reynaert would be the sole titleholder thereto. Had the court been aware of this amendment, denial of the motion to intervene would not have been an abuse of discretion.

Although we are cognizant of the general rule that, where a party alleges fraud has been committed on the court, the court must conduct an evidentiary hearing to determine whether the alleged fraud exists, *St Clair Commercial & Savings Bank v Macauley,* 66 Mich App 210, 214-215; 238 NW2d 806 (1975), lv den 396 Mich 864 (1976), we do not conclude that the court erred by not holding an evidentiary hearing on this issue because, as we indicated earlier, the trial judge would have been absolutely correct in denying the motion to intervene on the basis that the amendment to the memorandum agreement extinguished any rights of the intervenors. Thus, intervenors have not established error.

As to their second claim of error, intervenors contend that the court abused its discretion by ordering intervenors to pay costs and attorney fees

to plaintiff. Again, we must disagree. Michigan adheres to the general rule that awards of costs and attorney fees are recoverable only where specifically authorized by statute, the court rules or a recognized exception. *Warren v McLouth Steel Corp,* 111 Mich App 496, 507; 314 NW2d 666 (1981), lv den 417 Mich 941 (1982).

MCR 2.114(B) requires that every pleading of a party represented by an attorney is to be signed by at least one attorney of record. MCR 2.114(D) provides that, by signing the pleading, the signer certifies:

> (1) he or she has read the pleading:
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and
> (3) the pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If the pleading is signed in violation of MCR 2.114(D), the court is empowered to impose an appropriate sanction, "which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees." MCR 2.114(E). MCR 2.113(A) makes the provisions of MCR 2.114 applicable to motions and affidavits.

Because intervenors made false representations in their motion to intervene and accompanying affidavits by claiming they had an interest in the warehouse property when they did not, the court appropriately imposed costs and reasonable attor-

ney fees since the motion and affidavits were signed contrary to MCR 2.114(D)(2) and (3). Thus, we affirm the lower court in Docket No. 92285.

In Docket No. 94573, Monteith claims that the trial judge incorrectly granted plaintiff's motion for reconsideration of the court's order which set aside the default judgment against Monteith.

Plaintiff's motion was brought pursuant to MCR 2.119(F)(3), which provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

In *Brown v Northville Regional Psychiatric Hospital,* 153 Mich App 300, 309; 395 NW2d 18 (1986), this Court stated the following with respect to the foregoing rule:

> Martin, Dean & Webster, Michigan Court Rules Practice, Rule 2-119, p 537 states:
> " . . . It is hard to give literal application to this language—for example, it would seem unlikely that the original losing party was 'misled' and irrelevant that the original winning party was misled. Instead, the language, taken as a whole, can be interpreted as an expression of great reluctance to entertain or grant motions for reconsideration. Nonetheless, it would be a strange result to perpetuate an error on the grounds that it was not 'palpable' or more generally upon a reluctance to reconsider issues (especially when the same error, if not harmless, would presumably be subject to correction on appeal, but at much greater expense)."

We read this provision governing rehearings as not restricting the discretion of the trial judge to reconsider motions where he later determines that he or his predecessor made a serious error, based on an intervening change in the law or otherwise.

Similarly, in *Smith v Sinai Hospital of Detroit,* 152 Mich App 716, 723; 394 NW2d 82 (1986), this Court stated that this court rule merely provides a trial judge with some guidance on when to deny motions for rehearing. The court rule does not prevent a court's exercise of discretion on when to give a party a "second chance" on a motion it has previously denied.

In our case, the trial judge correctly granted plaintiff's motion for reconsideration. Attached to the motion were four affidavits with averments that seriously called into question the veracity of the factual allegations contained in Monteith's affidavit supplied in support of his motion to set aside the default judgment. These averments could not be ignored. As a matter of fact, had plaintiff presented this evidence at the hearing on Monteith's motion to set aside the default judgment, the court would never have set aside the default judgment. Thus, we find no error.

Defenant Monteith in his final issue in Docket No. 94573 and defendants Reynaert in Docket No. 94574 allege that error resulted when the court ruled that the entry of a default judgment barred them from challenging the foreclosure sale and any resulting deficiency in the post-sale proceedings. Defendants argue that, pursuant to MCR 2.603(B) and MCL 570.1124; MSA 26.316(124), they possess standing to challenge the foreclosure sale and any resulting deficiency judgment.

Specifically, defendants argue that MCR 2.603(B)(3)(b) provides them with standing to chal-

lenge the manner of the property sale in light of the alleged improprieties committed by the receiver and to adjudicate the amount, if any, of the deficiency.

This is an issue of first impression. Initially, we must decide the issue of the receiver. Plaintiff sought and obtained the appointment of a receiver pursuant to the Michigan Construction Lien Act, MCL 570.1101 *et seq.;* MSA 26.316(101) *et seq.* More specifically, the receiver was appointed under MCL 570.1122(1); MSA 26.316(122)(1). This section of the statute permits a mortgagee to petition for the appointment of a receiver in any foreclosure sale on real property upon which an incomplete improvement exists. Once a receiver is appointed, the receiver is deemed a fiduciary for the benefit of all persons having or claiming interests in the real property. MCL 570.1122(2); MSA 26.316(122)(2). MCL 570.1124(1); MSA 26.316(124)(1) sets forth the procedures for disbursement of proceeds from a foreclosure sale when a receiver is involved and provides:

> Upon the completion of the sale of the real property, the receiver shall prepare and submit a final account for examination and approval by the court. The court shall enter a final order directing the distribution of all funds or other assets held by the receiver. Repayment of funds borrowed by the receiver, under court authority, for the completion of improvements, or for any other purpose shall have priority in the distribution, unless a different priority has been ordered by the court. The next priority shall be that of funds expended by the receiver, including his or her fees and those of his or her attorneys and agents. The remaining funds shall be distributed to the parties in the order of the priority of their respective liens, encumbrances, or other rights as determined by the court. *The court shall adjudicate the right, if any,*

*to a deficiency judgment against any contracting
party.* [Emphasis supplied.]

Once plaintiff invoked its rights to a receiver, it
obligated the court and the receiver to disburse
the proceeds from the foreclosure sale in accor-
dance with the above provision of the Construction
Lien Act. Thus, the court was required, by the use
of the term "shall," to adjudicate the right, if any,
to a deficiency judgment against any contracting
party.

However, before we determine whether defen-
dants were entitled to an adjudication, we must
initially decide whether defendants, as defaulted
parties, had standing to challenge the accuracy of
the deficiency judgment in a post-default judgment
hearing. We conclude that they did.

Generally, a defaulted party may not proceed
with the action until the default has been set
aside. MCR 2.603(A)(3). However, a defaulted party
does have a right to participate in post-default
judgment proceedings if the conditions set forth in
MCR 2.603(B)(3)(b) have been met. That rule pro-
vides:

If, in order for the court to enter judgment or to
carry it into effect, it is necessary to
(i) take an account,
(ii) determine the amount of damages,
(iii) establish the truth of an allegation by evi-
dence, or
(iv) investigate any other matter,

the court may conduct hearings or order refer-
ences it deems necessary and proper, and shall
accord a right of trial by jury to the parties to the
extent required by the constitution.

See also *Wood v DAIIE,* 413 Mich 573; 321

NW2d 653 (1982). The holding of post-default judgment proceedings is within the trial court's discretion. *Id.,* p 585. The rule appears to require a post-default judgment hearing to determine damages only when it is necessary.

In this case, the court should have held an evidentiary hearing on the issue of the right to a deficiency judgment. Because plaintiff secured the appointment of a receiver, and because the receiver was required to disburse the proceeds of the foreclosure sale in accordance with MCL 570.1124(1); MSA 26.316(124)(1), defendants Reynaert and Monteith were entitled to an adjudication of the right of the bank to a deficiency judgment. We deem these defendants to be "contracting parties" within the meaning of MCL 570.1103(4); MSA 26.316(103)(4), since they contracted with a series of contractors to build the necessary restaurant facilities. Because MCL 570.1124(1); MSA 26.316(124)(1) requires the court to adjudicate the right, if any, to a deficiency judgment, a post-default judgment hearing was necessary within the meaning of MCR 2.603(B)(3)(b)(ii). Thus, we remand to the lower court for an evidentiary hearing on the question of the right to a deficiency judgment. In all other respects, the trial court is affirmed.

Affirmed in part, reversed in part and remanded. We do not retain jurisdiction.