HICKS v OTTEWELL

Docket No. 96853. Submitted June 27, 1988, at Detroit. Decided February 21, 1989.

Dale Hicks, Clinton Meyering and Martin Walker, Jr., collectively the landlord of lessee Northside Cars, Inc., brought an action in the 52nd District Court, 4th Division, seeking the payment of past due rent by Northside Cars and Northside Car corporate officer Richard S. Ottewell, an attorney. Under a consent judgment entered by the district court, defendants were to pay plaintiffs $2,400 plus interest upon the settlement of a related action pending in Oakland Circuit Court. The parties further agreed that plaintiffs would not seek to satisfy the consent judgment until the circuit court action was concluded. Plaintiffs, however, filed for garnishments and execution against defendants' assets in an attempt to satisfy the judgment. Defendants succeeded in obtaining a district court order quashing the garnishments and execution. The order further provided that defendants could tax costs and attorney fees incurred at the postjudgment proceedings. Although Julian M. Levant was the attorney of record for defendants, defendant Ottewell without Levant's knowledge or permission drafted the motion for costs and attorney fees and the related notice of hearing and proof of service. The affidavit in support of the request for costs and attorney fees was prepared and signed by James R. Nair, an officer and director of Northside Cars. Ottewell signed Levant's name on the motion, bill of costs and proof of service and had his secretary, Marion Hansen, notarize the documents before they were filed with the district court. Levant became aware of the motion, concluded it was ill advised, and withdrew it. The district court, suspecting that sanctions were in order for a violation of the requirement under MCR 2.114 that a party's pleading must be signed by the party's attorney of record, ordered Levant, Ottewell and Hansen to appear for a hearing. Following the hearing, the district

REFERENCES

Am Jur 2d, Notaries Public § 13; Pleadings § 339.

See the Index to Annotations under Motions; Notaries Public; Pleadings.

court ordered Ottewell, Nair and Levant to pay $1,000 to plaintiffs' attorney and fined them $1,000 each, payable to the district court. In addition, the district court issued orders directing the Secretary of State to revoke the notary-public commissions of Ottewell and Hansen. The Oakland Circuit Court, Alice L. Gilbert, J., affirmed on appeal. Ottewell, Nair and Levant sought and were granted leave to appeal before the Court of Appeals.

The Court of Appeals *held:*

1. MCR 2.114 requires that every pleading of a party represented by an attorney be signed by at least one attorney of record for the party. The court rule further provides that, by signing a pleading, the signer certifies: (1) he has read the pleading; (2) to the best of his knowledge, information, and belief formed after reasonable inquiry, the pleading is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and (3) the pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Where a pleading is signed in violation of MCR 2.114, a court shall impose an appropriate sanction, including reasonable attorney fees. In this case, the record disclosed a violation of MCR 2.114 and the district court therefore did not err in ordering the appellants to pay plaintiffs' attorney fees.

2. Punitive damages are not available in this state. The district court's fine of $1,000 on each of the appellants was imposed as punishment in this case and is therefore improper. On remand, the district court's order is to be modified so as to strike the $1,000 penalties on the appellants.

3. The power to revoke the commission issued to a notary public upon presentation of satisfactory evidence of official misconduct or incapacity is vested by statute in the Governor, who has delegated that power to the Secretary of State. Thus, since the district court lacked authority to order the Secretary of State to revoke the notary-public commissions of Ottewell and Hansen, the district court's orders to the Secretary of State are vacated.

4. The appellants were not denied due process of law because the order commanding them to appear for a hearing gave no advance notice of the nature of the hearing or their potential liability for sanctions. The appellants were given ample opportunity at the hearing to question witnesses and present arguments and were, therefore, not prejudiced by the lack of notice.

Affirmed in part, reversed in part, and remanded.

MICHAEL J. KELLY, P.J., dissented and would strike all of the sanctions imposed by the district court. Judge KELLY would hold that the appellants' rights to procedural due process were violated since there was no notice reasonably calculated to inform them prior to the hearing of the matters called into question by the district court, the district court judge functioned both as a prosecutor and a judge, and the witnesses were required to testify against themselves in violation of both federal and state constitutions. Judge KELLY would also hold that the circuit court abused its discretion in refusing to allow the appellants to present oral arguments and in denying 'the appellants' motion for findings of fact and conclusions of law in support of its affirmance of the district court's orders.

1. MOTIONS AND ORDERS — PLEADING — SANCTIONS.

A party and his attorney of record may properly be ordered to pay the opposing party's costs and attorney fees incurred in responding to a motion made by the party where the motion and its accompanying notice of hearing and proof of service were drafted by the party, and not his attorney, and contain signatures purporting to be those of the attorney but actually forged by the party; such motion violates the requirement that every pleading of a party represented by an attorney must be signed by at least one attorney of record who has read the pleading (MCR 2.114).

2. DAMAGES — PUNITIVE DAMAGES.

Damages may not be awarded as punishment for a party's misconduct.

3. NOTARIES — REVOCATION OF COMMISSION — STATUTES.

The power to revoke the commission issued to a notary public upon presentation of satisfactory evidence of official misconduct or incapacity is vested in the Governor, who has delegated that power to the Secretary of State (MCL 16.133, 55.107; MSA 3.29[33], 5.1041).

*Clarence H. Ledwon,* for Richard S. Ottewell, James R. Nair and Julian M. Levant.

Before: MICHAEL J. KELLY, P.J., and MAHER and M. WARSHAWSKY,* JJ.

M. WARSHAWSKY, J. By leave granted, defen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dants Richard S. Ottewell, Julian M. Levant and James R. Nair appeal from a November 10, 1986, Oakland Circuit Court order affirming sanctions imposed by the 52nd District Court, 4th Division.

Defendants Ottewell and Levant are Oakland County attorneys. Defendant Nair is an accountant employed by defendant Ottewell. Both Nair and Ottewell are officers and directors of defendant Northside Cars, Inc.

The underlying action was commenced by plaintiffs Dale Hicks, Clinton Meyering, and Martin Walker, Jr., in district court in July, 1981, to recover $3,000 in past due rent from Ottewell and Northside Cars, Inc. The action was settled by consent judgment entered February 14, 1984. The judgment was in favor of plaintiffs in the amount of $2,400 plus interest to be paid at the time of judgment or upon the settlement of a related action pending in the Oakland Circuit Court. The parties separately agreed that plaintiffs would not seek to satisfy the consent judgment until the circuit court action was concluded.

In spite of that agreement, on April 30, 1985, plaintiffs filed for garnishments and execution against defendants' assets. Defendants moved to quash the process and, at a hearing on May 23, 1985, plaintiffs' attorney, David Foster, admitted that the garnishments and execution were improper and contrary to the understanding of the parties. On June 10, 1985, the district court entered an order quashing the garnishments and execution and provided that defendants could tax costs and attorney fees "for the necessity of representation in these post-judgment proceedings."

The controversy in this appeal began on July 3, 1985, when several documents were filed in district court bearing the signature of Julian M. Levant, attorney of record for defendants, including a mo-

tion for entry of an order allowing costs and attorney fees under MCR 2.114, sanctions, notice of hearing and proof of service. Defendant Ottewell prepared the papers and signed Levant's name to them, purportedly with Levant's permission pursuant to a prior agreement between the attorneys. Under that agreement, Ottewell, a defendant in the action and an attorney, was to prepare pleadings for filing while Levant was listed as attorney of record and made court appearances. The agreement was made to reduce Ottewell's attorney fees to Levant. The pleadings were prepared and filed without Levant's actual knowledge or signature. Nair, the accountant, prepared the affidavit in support of the motion for costs and the bill of costs. Nair then presented them to Ottewell's secretary, Marion Hansen, who notarized the signature on the motion, bill of costs, and proof of service.

Weeks later, Levant learned of the motion, believed it was ill advised and notified the court of its withdrawal. On August 1, 1985, the district court judge, on his own motion, directed the sheriff to serve orders to appear at an evidentiary hearing on plaintiffs' attorney, David Foster, defendant's attorney, Levant, attorney Ottewell, and Ottewell's secretary, Marion Hansen.

On August 29, 1985, the attorneys and witnesses appeared before the district court as directed. Clarence Ledwon, the attorney representing Ottewell and Levant, objected that the trial court had not given his clients notice of the nature of the hearing or sufficient opportunity to prepare. Ledwon requested an adjournment and that supporting affidavits be filed. The district court judge denied the motion. The court then took testimony and concluded that sanctions would be imposed.

On February 20, 1986, the district court imposed

sanctions against Ottewell and Nair under MCR 2.114(E). The court imposed costs and a $1,000 attorney fee to be paid to plaintiffs' attorney, Foster. The court then imposed fines against the three defendants "for the abuse of the system, as a penalty," at $1,000 each, payable to the court. In addition, on January 23, 1986, the court entered orders directing the Secretary of State to revoke the notary-public commissions of attorney Ottewell and his secretary, Hansen.

Defendants first argue that the district court erred in awarding $1,000 to Attorney Foster pursuant to MCR 2.114(E). The facts produced at the August 29, 1985, hearing show that Levant had not read the pleadings to which his signature was attached and that Ottewell and Nair signed Levant's name without indicating that they signed in a representative capacity. MCR 2.114(B) requires that every pleading of a party represented by an attorney be signed by at least one attorney of record. MCR 2.114(D) provides that, by signing the pleading, the signer certifies: (1) he or she has read the pleading; (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the pleading is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and (3) the pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Where a pleading is signed in violation of MCR 2.114, the court "shall" impose an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees. MCR 2.114(E). MCR 2.113(A) makes the provisions of

MCR 2.114 applicable to motions and affidavits. *Michigan Bank-Midwest v D J Reynaert, Inc,* 165 Mich App 630, 644; 419 NW2d 439 (1988). The rule does not mandate that, before a court may impose sanctions, it must determine whether a party or his attorney had an improper purpose in filing the pleadings. *Briarwood v Faber's Fabrics, Inc,* 163 Mich App 784; 415 NW2d 310 (1987). The inclusion of the word "shall" in the subrule clearly encourages the use of the sanction provision. *Lloyd v Avadenka,* 158 Mich App 623, 628-629; 405 NW2d 141 (1987).

In the present case, the testimony made clear that the court rules had been violated. Thus it was correct for the district judge to order defendants to pay the expenses incurred resulting from the filing of the pleading, including the reasonable attorney fees. The attorney fee awarded to plaintiffs' attorney Foster is supported by the record. We find no error.

Defendants next contend that punitive damages in the amount of $1,000 payable to the court were improper under MCR 2.114(E). The district court ordered defendants to pay to the court $1,000 "for the abuse of the system, as a penalty." We agree with defendants. Punitive damages are designed to punish a party for misconduct. In Michigan, punitive damages may not be awarded. *Association Research & Development Corp v CNA Financial Corp,* 123 Mich App 162, 171; 333 NW2d 206 (1983), lv den 418 Mich 858 (1983). Because MCR 2.114(E) does not expressly provide for punitive damages and because damages may not be awarded as punishment, the district court erred in this case. Accordingly, the district court order is to be modified, striking the $1,000 penalty to the district court.

Defendants next contend that the district court

lacked jurisdiction to order the Secretary of State to revoke the notary commissions of Ottewell and Hansen. We agree. MCL 55.107; MSA 5.1041 vests the Governor with the power to revoke the commission issued to a notary public upon presentation of satisfactory evidence of official misconduct or incapacity. This power has been delegated to the Secretary of State under the Executive Organization Act, MCL 16.133; MSA 3.29(33). The district court and the circuit court lack jurisdiction to compel a discretionary act by an officer in the executive branch of the government. Const 1963, art 3, § 2; *Randall v Meridian Twp Bd*, 342 Mich 605, 608; 70 NW2d 728 (1955). We therefore vacate the district court's order of January 23, 1986, directing the Secretary of State to revoke the notary public commissions of attorney Ottewell and his secretary Hansen.

Lastly, defendants argue that the district court erred by failing to give advance notice of the charges against them and, as a result, the sanctions were imposed without due process of law. We disagree. MCR 2.114 does not provide a procedure to be followed before sanctions can be imposed. However, the fundamental requirement of due process is the opportunity to be heard at a meaningful time in any meaningful manner. *Matthews v Eldridge*, 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976). With regard to notice, due process requires notice " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Trussell v Decker*, 147 Mich App 312, 323; 382 NW2d 778 (1985), citing *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950).

In this case, defendants were given ample oppor-

tunity at the hearing to question witnesses and present their arguments and were, therefore, not prejudiced by a lack of notice. Moreover, the court rule allows the trial court "on its own initiative" to impose an appropriate sanction for violation of the rule. MCR 2.114(E). The court made it clear that the hearing was not in the nature of a contempt proceeding, but merely a fact-finding proceeding to determine if there was a violation of the court rules. Thus, defendants' argument that the same procedural due process requirements that apply to contempt proceedings apply here as well is without merit. We find no error.

Affirmed in part, reversed in part, and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

MAHER, J., concurred.

MICHAEL J. KELLY, P.J. *(dissenting).* I would strike all of the sanctions imposed by the district court as I believe its actions violated defendants' procedural due process rights.

This chain of events was started in motion when the district judge fired up his own engine and, on August 1, 1985, with nothing pending before him, sua sponte directed the sheriff to serve "orders to appear" at an evidentiary hearing on all attorneys and subpoenas on Richard Ottewell and Marion K. Hanson. These orders are memorialized in the district court's docket entries. Actual written court orders are not provided this Court and are not contained in the record below.

When the parties convened on the hearing date as directed by the district judge on August 29, 1985, an attorney, Clarence Ledwon, representing Messrs. Ottewell and Levant moved on the record for a specification by the court of the nature of the

hearing and sufficient opportunity to prepare for it. He requested an adjournment for time to prepare and also that supporting affidavits be filed. He objected to the hearing on the further ground that subpoenas were served only the day before, contrary to MCR 2.506(C)(1), which requires two days. The district judge replied:

> All right, I'm not going to adjourn this case. I realize that maybe some of you have no idea why you're here. The record will show that this case is on the docket at my own initiative. I'm here to gather some truth, I guess. I intend to take some testimony. Mr. Ledwon, you will have ample opportunity to see whatever it is to be seen, and if after the conclusion of this hearing something further needs to be done, or whatever, I'll address that issue, but I think this Court has inherent power to call lawyers into court who are involved in a case that is before the court as well as any other persons for that matter who may have an interest in this subject matter of the lawsuit. It's inherent power. This is not necessarily a contempt proceeding, nobody's on trial, I just have some questions that I feel compelled to ask. Maybe nothing will come of it, I don't know.

Witnesses were sworn and examination was conducted *by the judge.* Ten marked exhibits were handed by the judge to the first witness, Attorney David Foster. Mr. Foster testified to conversations he had with Attorney Julian Levant. Counsel (Mr. Ledwon) objected asserting the attorney-client privilege. The judge overruled the objection. Mr. Ledwon then cross-examined Mr. Foster on matters pertaining to the exhibits. At one point Mr. Ledwon asked the judge:

> *Mr. Ledwon:* Can the court instruct the witness to answer the question?

*The Court*: This entire line of questioning is not relevant, Mr. Ledwon. I've—I've let you go quite long.

*Mr. Ledwon*: Your Honor, I would . . . .

*The Court*: Not relevant to these proceedings. I realize you're at somewhat of a disadvantage because you didn't know why we're here, and that's why I permitted you to go as far as you have on these—in this matter, but it's not relevant.

*Mr. Keller*: Your Honor, representing Miss Hansen in this regard, who is nothing but a young, recently trained, legal secretary, this question with respect to notarization, attorney signature, and what not is deemed irrelevant by the Court, I do not see the basis for the relevance for Miss Hansen's order to appear in Court today in that respect.

*The Court*: It is relevant as it pertains to your client; not relevant as to how Mr. Foster runs his office. Big difference.

*Mr. Keller*: Well, in that respect, your Honor, I —I do not see the differentiation or relevance. If . . . .

*The Court*: Well, perhaps it will become clearer as we go on. Maybe some of you are having a difficult time understanding what's important and what isn't. I realize you don't know why you're here, perhaps, or you claim you don't know why you're here. Whether or not Mr. Foster signs pleadings with somebody else's consent or whatever, is not relevant to exhibits one through ten, which are in this file.

This led to a further exchange between the court and counsel for Marion Hansen in the course of which Mr. Keller objected to the order requiring Ms. Hansen's appearance in court. At this time the court expressed its concern that improper pleadings had been filed in the court which prompted Mr. Ledwon to ask if the court were attacking the documents on the basis of forgery or being ill prepared. The court replied:

*The Court*: You're getting warm, you're getting warm, Mr. Ledwon.

\* \* \*

*Mr. Ledwon*: —then we're getting into contempt proceedings, your Honor, and we're . . . .

*The Court*: It's not a contempt proceeding yet . . . .

*Mr. Ledwon*: —entitled to have it heard by another judge.

*The Court*: —it is not a contempt proceeding yet. If it comes to that, I agree with you, some other Judge is going to hear it. I'm trying to learn some truth right now.

Later on the court called Attorney Julian Levant to the stand. Mr. Ledwon objected to any testimony by Mr. Levant on the basis of the attorney-client privilege. The court, which throughout was conducting the questioning, ruled:

Well, I realize that there is an attorney-client relationship, but that relates only to matters that are not public. I can ask him questions about these exhibits, because they are not privileged. They are place [sic] in the court file for the entire world to see. There . . . .

*Mr. Ledwon*: If the . . . .

*The Court*: —is no privilege that attaches to those documents.

*Mr. Ledwon*: —if they are, your Honor, and if there's any allegations relating to any criminal matters or anything of that nature, then this becomes a very important question relative to the attorney-client privilege.

*The Court*: I don't understand what you mean.

*Mr. Ledwon*: I—I don't know—again, this is a hearing, your Honor, I don't know how far the Court's gonna go. Whether there's an intent on the Court to prove forgery, or a crime, and if so, that is the duty delegated to a prosecutor, and not to a judge, your Honor, I respectfully submit.

*The Court*: Well, I agree, it could conceivably be a criminal matter. It is, however still a matter of contempt, might be a matter of contempt, which is within the power of this Court.

Thereafter the same procedure was followed, the court calling James R. Nair, an accountant and an officer of Northside Cars, during which the court conducted the examination and both made and ruled on objections. At the conclusion of seventy pages of such testimony the court made the following statement:

*The Court*: All right, at the very least I'm going to impose some sanctions, and I'm not quite sure to what extent and against whom at this point in time. I'm not going to rule on that today, but I'm going to do at least that. I think there's been some real unauthorized pleadings filed at the very least, and I think Mr. Foster's been run around the flag pole, and he's entitled to be compensated for that.

While the court did not thereafter make findings of contempt it did issue two orders, both purporting to issue at a session of the court held on January 23, 1986, at which it ordered the Secretary of State to revoke the notary commissions of Richard S. Ottewell and Marion K. Hansen. Never did the court identify the source of its authority for those orders.

Court was again convened on February 20, 1986, at which time the court stated it was going to impose sanctions " under the court rules." At this time the court referred to MCR 2.114. Mr. Ledwon addressed the court as follows:

*Mr. Ledwon*: Before the Court proceeds, your Honor, I wonder—I'm wondering if the Court would ah, have the two exhibits filed, which were the Motions ah, that were presented to the Clerk

here, I left 'em at the ah—I believe they were here before . . . they're here, right here now, your Honor?

One is a Motion that we have made and ah, if I may be permitted to expound upon the same?

*The Court*: No, have a seat, Mr. Ledwon. I'm about to do whatever I'm going to do.

*Mr. Ledwon*: Can we make a separate record, or have the ah . . . .

*The Court*: No, please sit down.

*Mr. Ledwon*: —the offer of proof?

*The Court*: Sit down.

The court imposed sanctions against Messrs. Otte-well and Nair under MCR 2.114(E). Those are referred to in the majority opinion. I would reverse the district court as to all sanctions, not only the penal sanctions, because there was no due process notice reasonably calculated to inform the parties of the matters called into question by the district judge. The subpoenas were violative of MCR 2.506(C)(1). The district court judge conducted the hearings as an interested party, as a prosecutor and presided over the proceedings as the judge. The witnesses were required to testify against themselves in violation of both federal and state constitutions. This was not a process; this was a mess.

To those who would observe that the court rule permits a trial court "on its own initiative" to impose appropriate sanctions for violation of MCR 2.114, I would reply that any court that orders a hearing should give notice of what that hearing is about. Such notice, to be timely, should be consonant with the time restrictions for motion practice in the local venue or in accordance with MCR 2.119.

Finally, I would observe that the appellants did not receive due process on appeal to the circuit

court. In an appropriate case an appellate tribunal is empowered to enter a peremptory affirmance. This is not the case for such an order. The opinion dated October 1, 1986, and order entered November 3, 1986, in the circuit court made no findings of fact or conclusions of law. In fact in a separate order the circuit judge denied appellants' motions for findings of fact and conclusions of law and denied rehearing for failure to grant oral argument. The circuit judge abused her discretion. Appellants had a right to oral argument in their circuit court appeal pursuant to MCR 7.101(K). Although there is no specific rule requiring the circuit court, sitting as an appellate court, to make findings of fact and conclusions of law, I believe that due process requires something more than was afforded the appellants in this case by the circuit court. Since I am again rattling in the dissent basement I am not going to undertake the sketching of those perimeters and parameters.

I would reverse each and every order of the district court and award costs to the appellants.