## VAN WAGONER v VAN WAGONER

Docket No. 68059. Submitted November 2, 1983, at Lansing.—Decided December 19, 1983.

Milton Van Wagoner brought an action for divorce from Ruth L. Van Wagoner in Genesee Circuit Court. On the second day of the trial, the parties stipulated to a property settlement on the record. Prior to the entry of the judgment of divorce, the plaintiff petitioned to set aside the property settlement and to continue the trial on the basis that the property settlement was not free and voluntary. Subsequently, the court, Earl E. Borradaile, J., entered a judgment of divorce and later denied the petition to set aside the judgment which basically incorporated the property settlement, finding that the plaintiff had failed to show any duress or incapacity that would void the property settlement. The plaintiff appealed. *Held:*

The trial court's order denying relief should be affirmed. The trial judge did not err in finding that the plaintiff failed to prove incapacity or duress such that the property settlement should be set aside. However, the property settlement, as stipulated to, was binding, and a unilateral modification by the defendant should not be allowed to stand. The property provision under the judgment of divorce should be modified so that 30 percent of the plaintiff's retirement benefits are alimony, as agreed, not part of the property settlement.

Affirmed in part, reversed in part, and remanded.

1. Divorce — Property Settlements — Consent Judgments.

The validity of property settlements reached through negotiations should generally be upheld in the absence of fraud, duress, or mutual mistake; consent judgments reached by agreement of the parties differ from litigated judgments reached after trial on the merits; the former primarily rest on the consent of the

References for Points in Headnotes

[1] 24 Am Jur 2d, Divorce and Separation §§ 489, 834.
[2] 24 Am Jur 2d, Divorce and Separation §§ 832, 834.
[3] 15A Am Jur 2d, Compromise and Settlement § 25.
[4] 41 Am Jur 2d, Incompetent Persons § 71.
[5] 41 Am Jur 2d, Incompenent Persons § 72.

parties rather than upon the judgment of the court and generally cannot be set aside without the approval of the parties thereto.

2. DIVORCE — PROPERTY SETTLEMENTS — FINALITY.

Settlements duly arrived at by the parties and placed on the record in open court in the presence of counsel are entitled to a high degree of finality.

3. COMPROMISE AND SETTLEMENT — FINALITY.

A valid compromise and settlement is final, conclusive, and binding upon the parties; it is as binding as any contract the parties could make and as binding as if its terms were embodied in a judgment.

4. CONTRACTS — MENTAL CAPACITY.

The well-settled test of mental capacity to contract is whether the person in question possessed sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged; to avoid a contract it must appear not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that he had no reasonable perception of the nature or terms of the contract.

5. CONTRACTS — EMOTIONAL DISORDERS.

Emotional disorders of a party to a contract, alone, should not invalidate a contract.

*Barry L. Moon, P.C.* (by *Barry L. Moon),* for plaintiff.

*Nellis, Jahr & Steffen* (by *James L. Steffen),* for defendant.

Before: CYNAR, P.J., and BEASLEY and T. GILLESPIE,* JJ.

CYNAR, P.J. On the second day of the trial, December 23, 1981, the parties stipulated to a property settlement on the record. Prior to the entry of the judgment of divorce, plaintiff, on

* Circuit judge, sitting on the Court of Appeals by assignment.

March 23, 1982, petitioned to set aside the property settlement and to continue the trial on the basis that the property settlement reached was not free and voluntary. The trial judge signed the judgment of divorce on April 8, 1982. Following a hearing on May 29 and June 23, 1982, the trial court denied the petition to set aside the judgment. Plaintiff appeals as of right from the November 1, 1982, order denying relief.

The parties were married on March 12, 1948. Born of the marriage were five sons, all older than 18 years of age at the time of these proceedings.

In 1974, the defendant sustained injuries in an automobile accident. In a personal injury action which followed, defendant received damages for her injuries and plaintiff recovered for loss of consortium. Mr. Steffen, counsel for defendant in the present action, represented both parties in the personal injury case.

Sometime before the parties came to him about the auto accident, Mr. Steffen had been a member of another law firm. Plaintiff and his mother had been in to see another attorney in that firm about an estate plan for plaintiff's mother. Mr. Steffen was not involved in that matter and knew nothing of it until June 23, 1982, during the final hearing in the instant case.

At the trial, only the plaintiff testified. In his opening statement, plaintiff's counsel stated that there had been a prior complaint for divorce filed by the defendant, which was withdrawn in an effort to achieve reconciliation. Plaintiff testified that the attempted reconciliation failed because of distrust and suspicion by defendant over plaintiff's association with a woman. Plaintiff characterized this woman as an old acquaintance with whom he had not developed a physical relationship until

after the first divorce action and the separation which followed. Plaintiff also testified about many other factors which led to the second divorce action.

During the trial in December, 1981, which resulted in the stipulated property settlement, plaintiff stated that he was suffering from numerous health problems. The problems included stomach surgery and repeated surgery thereafter, following complications. In addition, plaintiff stated that he was troubled by a hiatal hernia, a hernia following stomach surgery, severely infected sinuses, and a knee condition necessitating surgery.

Plaintiff's testimony continued, relating to matters of his and defendant's property holdings. On cross-examination, defense counsel questioned the plaintiff about his relationship with another woman. Several sentimental greeting cards were admitted. Plaintiff maintained that only a platonic relationship existed until the time that his wife filed for divorce in 1980 and left him.

During the course of the second day of trial, both parties stipulated to a property settlement on the record.

Following the December 23, 1981, trial date, plaintiff retained his present counsel, claiming that he did not understand the settlement and that he had been under duress because of his physical and mental health. Plaintiff maintained that for these reasons he had not entered the agreement freely and voluntarily. Plaintiff wanted the agreement set aside and the trial continued.

Prior to the judgment's being signed by the court, plaintiff's counsel petitioned for an evidentiary hearing. At the beginning of the hearing, the court was reminded that it had indicated that no judgment would be signed until the hearing was

held. The judge responded that apparently he saw the judgment in the basket and signed it by mistake. Subsequently, the court observed that, because the judgment was signed, the hearing was in effect a motion to set aside the judgment.

It should be noted that the judgment of divorce follows the property settlement stipulated to by the parties except for the following provision. The judgment of divorce provides that the defendant shall receive 30 percent of the plaintiff's gross pension benefits according to a stated schedule as part of the property settlement. In the event that the defendant should predecease the plaintiff, the payments would be made to the heirs of defendant's estate. This is not in accordance with the property settlement on the record, which provided that 30 percent of the gross pension was to be paid as alimony to defendant upon the plaintiff's retirement.

At the hearings to set aside the judgment on May 19 and June 23, 1982, the plaintiff introduced the testimony of Dr. Daros, his surgeon and treating doctor, and William M. Atchison, a psychiatric social worker. Essentially, their testimony was that plaintiff was under stress and impaired mental status at the time of the trial.

The plaintiff testified at the hearing in reference to his testimony at trial. He stated that his judgment was affected because he was upset. He was experiencing severe abdominal pain, gas and diarrhea, and could not eat. He could not remember much of the property settlement negotiations and would have signed anything to avoid being there.

In addition, plaintiff sought to show that he was under duress because of defense counsel's familiarity with plaintiff. As noted herein, defense counsel had represented both plaintiff and defendant in a

personal injury suit. Defense counsel's former law firm had also advised plaintiff's mother regarding her estate. The trial court found that there was no basis for relief on this issue.

At the close of the evidence and following argument of counsel, the trial court determined that plaintiff had failed to show any duress or incapacity that would void the property settlement.

Whether or not the trial court abused its discretion by upholding the property settlement and judgment is the dispositive issue in this case. The following factual conclusion was made:

"The court is satisfied that he knew exactly what he was doing and that there should be no relief granted from a settlement that he entered into knowingly in open court without any pressure from anybody else other than his own knowledge that he could lose the whole thing if some of his peccadilloes with his girl friend came out."

Our analysis is guided by the following general principles:

"The validity of property settlements reached through negotiations is generally upheld in the absence of fraud, duress, or mutual mistake. Consent judgments reached by agreement of the parties differ from litigated judgments reached after trial on the merits. The former primarily rest on the consent of the parties, rather than upon the judgment of the court, and generally cannot be set aside without the approval of the parties thereto." (Footnotes omitted.) *Madden v Madden,* 125 Mich App 54, 58-59; 336 NW2d 231 (1983).

In *Tinkle v Tinkle,* 106 Mich App 423; 308 NW2d 241 (1981), a divorce was awarded pursuant to a property settlement agreement placed on the record in open court with both parties and their

counsel present. The same is true of the instant case. In *Tinkle,* before the trial judge signed and entered the judgment of divorce, the plaintiff filed a "petition to set aside settlement judgment and bring matter on for trial". The plaintiff claimed that she had been under stress with medical problems aggravated by the divorce pressures so that she "was unable to fully comprehend" the settlement. Again, the instant case is similar. The trial court in *Tinkle* held that the parties had knowingly and voluntarily entered into the settlement agreement. This Court affirmed the trial court's denial of plaintiff's petition for trial, noting:

"[T]he trial judge, hearing both the divorce proceedings and the petition to set aside the settlement, found plaintiff's claim to be without basis. We decline to upset the trial judge's finding in that regard; she did not abuse her discretion." *Tinkle, supra,* p 426.

The Court in *Tinkle* made the following pronouncement which is consistent with earlier decisions of this Court:

"Settlements, duly arrived at by the parties and placed on the record in open court in the presence of counsel, are entitled to a high degree of finality." *Tinkle, supra,* p 428.

In *Pedder v Kalish,* 26 Mich App 655; 182 NW2d 739 (1970), a settlement agreement put on the record in open court was later found void by the trial judge because the defendants had "exercised their right not to perform under this agreement". This Court vacated the order voiding the settlement and remanded for entry of a judgment in conformity with the stipulated settlement.

"We cannot agree that litigants are free to disregard a settlement agreement knowingly entered into on the court record and, as to which, mistake, fraud, or unconscionable advantage is not claimed.

" 'A valid compromise and settlement is final, conclusive, and binding upon the parties; it is as binding as any contract the parties could make, and as binding as if its terms were embodied in a judgment; and, regardless of what the actual merits of the antecedent claim may have been, they will not afterward be inquired into and examined.' 15 Am Jur 2d, Compromise and Settlement, § 21, p 956.

"A compromise and settlement is conclusive as to all matters included. It merges and bars all included claims and pre-existing causes of actions. To have such effect 'it is not necessary that the compromise shall have been performed.' 5 Michigan Law & Practice, Compromise and Settlement, § 6, citing cases. That agreements and consents between parties litigant are binding when made in open court, see GCR 1963, 507.9." *Pedder, supra,* pp 657-658.

In *Kline v Kline,* 92 Mich App 62; 284 NW2d 488 (1979), the parties reached a property settlement agreement on the record which the trial judge subsequently modified slightly by adding, among other things, an interest provision. This Court adhered to the strict provisions of the oral stipulation:

"We prefer to consider this issue on the basis that settlements should be encouraged and the parties to a controversy should be able to rely upon them. In keeping with that objective, we deem the addition of interest in the judgment of divorce to be a modification of the oral agreement and improper. In the case of *Dana Corp v Employment Security Comm,* 371 Mich 107; 123 NW2d 277 (1963), it was ruled that a referee of the Employment Security Commission is without authority to alter the terms of a stipulation after he has accepted it either by omitting anything therefrom or adding thereto.

"In the case of *Keeney v Keeney,* 374 Mich 660, 663; 133 NW2d 199 (1965), it is stated '[t]he property settlement provisions of a divorce decree or judgment may not be set aside, modified, or altered in the absence of fraud, duress, or mutual mistake, or from such causes as any other final decree may be modified.' " *Kline, supra,* p 78.

Plaintiff relies on *Norton Shores v Carr,* 59 Mich App 561; 229 NW2d 848 (1975), which is an apparent exception to the general rule. There, the parties "appeared in open court and, after a good deal of discussion, addition and deletion, placed the substance of an agreement on the record. The trial judge issued no opinion or judgment and simply adjourned the case at the conclusion of argument." The defendant then revoked his consent to the agreement, but the trial judge entered judgment anyway. This Court reversed, holding that both parties must approve both the form and substance of the decree. It may therefore be said of the instant case as was said in *Carr:* "As to the form of the judgment, the proposed order was submitted after [plaintiff] had withdrawn his consent." *Carr, supra,* p 564.

Plaintiff's reliance on the *Carr* case is misplaced. First, *Carr* is inconsistent with the cases discussed above. The decision was directly criticized in *Meyer v Rosenbaum,* 71 Mich App 388, 393; 248 NW2d 558 (1976):

"As a matter of public policy, it is extremely difficult to find any rationale for permitting a litigant to eschew a bargain knowingly made in open court, on the record of the court, and with the intent that the court and opposite party should rely thereon. The results of the *Norton Shores* doctrine would make the life of a trial judge extremely difficult. A great many, if not most, settlements are arrived at on the day of joust, when the

jury is in attendance and judge is waiting with instructions hopefully prepared. The attorneys then must be able to rely upon the knowledge that any stipulated agreement that they make will be final and binding on both parties. Otherwise, it will be extremely difficult to arrive at settlement, since the prepared litigant may not be willing to lose his day in court and be placed at the bottom of a ladder which may take him two years to climb." See also *Michigan National Bank of Detroit v Patmon,* 119 Mich App 772, 777-778; 327 NW2d 355 (1982).

The Court in *Meyer* looked to GCR 1963, 507.9 in concluding that the stipulation made in open court was binding. Therefore, defendant's claim of unilateral mistake did not warrant relief from the provisions of the agreement.

Second, if *Carr* is at all valid, its exception should be very limited. The proceedings in *Carr* were unusual in that the judge did not approve of the settlement or incorporate it into a ruling until after defendant revoked his consent.

Plaintiff sought to set aside the judgment by alleging duress. Plaintiff defined duress in a broad sense to include his bowel problems, his anxiety and his depression, the insights that he feared Mr. Steffen had possessed as his former counsel, and the length of time he was on the witness stand prior to the settlement.

As noted herein, the Court in *Tinkle* upheld a property settlement agreement where the plaintiff had alleged that her poor physical condition was connected with the pressures of the divorce. The Court distinguished the situation where lack of capacity to make a binding agreement is proven. *Star Realty, Inc v Bower,* 17 Mich App 248, 250; 169 NW2d 194 (1969), *lv den* 383 Mich 768 (1970), sets out the test for mental capacity:

"The well-settled test of mental capacity to contract, properly adopted by the trial court, is whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged. However, to avoid a contract it must appear not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that he had no reasonable perception of the nature or terms of the contract. See 17 CJS, Contracts, § 133(1); 2 Williston, Contracts (3d ed), Insane and Intoxicated Persons, § 256, p 94ff."

Emotional disorders, alone, will not invalidate a contract. *Star Realty, supra,* p 258. In *Star Realty,* the defendant was examined by a psychiatrist before and after the time he entered into the agreement. The agreement was not made in court and was without the benefit of counsel. The psychiatrist testified that at both examinations the defendant's judgment was impaired so that he could not relate the facts or put them together.

In contrast, plaintiff in the instant case was assisted by counsel and was observed throughout the trial and settlement by the judge. More than two months after the trial, he was examined by a psychologist at which time it is contended that he was neurotic and had impaired judgment.

The judge did not abuse his discretion by relying more on what he saw at the trial than on the testimony of the psychiatric social worker. Plaintiff was on the witness stand for a long time during the two days of trial. His answers to questions were always coherent and understanding. His attorney acknowledged his perception when the property settlement was put on the record:

"My client has indicated to me something not mentioned which would be a rather standard provision that we normally enter, but quite perceptively he did mention is the fact that Mrs. Van Wagoner does remarry,

that her pension rights and alimony would, basically her alimony would terminate."

In response to his counsel's question, plaintiff expressly agreed with the property settlement he heard placed on the record.

The trial judge did not abuse his discretion in disregarding plaintiff's allegations that he feared the insights that defendant's counsel might have had because of earlier contacts. Mr. Steffen had represented the parties in a personal injury suit and was aware that plaintiff had stomach troubles. Mr. Steffen had also been asked, about the time of trial, whether plaintiff had a possible inheritance. Plaintiff feared that Mr. Steffen knew of this inheritance because his former firm had counseled plaintiff's mother regarding her estate. Mr. Steffen denied knowledge of this matter.

We affirm the trial court's order denying relief. The trial judge did not err in finding that plaintiff failed to prove incapacity or duress such that the property settlement should be set aside. However, the property settlement, as stipulated to, was binding, and a unilateral modification by defendant should not be allowed to stand.

The property provision under the judgment of divorce should be modified so that 30 percent of the plaintiff's retirement benefits are alimony, not part of the property settlement. Further, under the alimony provision in the judgment of divorce, alimony is designated as permanent. However, under the settlement placed on the record, alimony is subject to change in the discretion of the court depending on the existing circumstances.

Therefore, this matter is remanded to the trial court for modification of the judgment of divorce in accordance with the original stipulation.

Affirmed in part, reversed in part, and remanded.