## APPLEKAMP v APPLEKAMP

Docket No. 139522. Submitted May 7, 1992, at Marquette. Decided September 8, 1992, at 9:05 A.M.

On May 21, 1987, Joann S. Applekamp obtained a default judgment of divorce in the Ontonagon Circuit Court, William G. Cloon, Jr., J., against William D. Applekamp. She was awarded one-half of an anticipated disbursement to the defendant of shares in an employee stock ownership plan. The defendant did not move to have the default set aside. The plan was terminated in 1991, and the defendant received $66,468.40 for 767.72688 shares at $84.38 a share. At the time of the disbursement, the defendant had been credited with 188.23024 shares for 1986, 154.85511 shares for 1987, 152.65909 shares for 1988, and 291.98244 shares were unallocated. The plaintiff moved to enforce the default judgment, and the court awarded $22,999.34 as her share of the plan disbursement, representing one-half of the shares earned by the defendant in 1986 and 1987 valued at $84.38 a share and 34.6 percent of the unallocated shares valued at the same price. The defendant appealed, claiming that the plaintiff should have been awarded $2,296.40, one-half of the value of the shares that were vested on May 21, 1987, and valued according to the share price on that date.

The Court of Appeals *held:*

In a contested divorce proceeding, the valuation of marital property for purposes of distribution must not be dependent upon the happening of events after the divorce. That rule, however, does not apply where the distribution of property is pursuant to a default judgment. Because the defendant failed to seek relief from the default judgment, he is bound by its terms and the trial court's determination that the plaintiff's share of the anticipated disbursement of the defendant's employee stock ownership plan must be valued using the 1991, rather than the 1987, share price. However, the award of the shares credited to the defendant in 1987 and the unallocated

REFERENCES

Am Jur 2d, Divorce and Separation §§ 428, 429, 937-939, 948, 949.
See the Index to Annotations under Default Judgments; Value and Valuation.

shares must be modified to $16,629.08 to reflect the fact that the parties were married for only a portion of 1987.

Affirmed as modified.

DIVORCE — DEFAULT JUDGMENTS — PROPERTY DIVISION.

The rule in contested divorce proceedings that the valuation of marital property for purposes of distribution must not be dependent on the happening of events after the divorce does not apply where judgment is entered and property is distributed upon the default of a party; accordingly, valuation of a party's employee stock ownership plan for distribution pursuant to a default judgment of divorce may be based on a postjudgment share price.

*Goodman & Makinen* (by *Michael E. Makinen*), for the defendant.

Before: GRIFFIN, P.J., and WEAVER and McDONALD, JJ.

GRIFFIN, P.J. This is a divorce case in which the sole issue is the value of an employee stock ownership plan (ESOP) defendant had with his employer, Copper Range Company. Plaintiff was awarded half of the value of the ESOP pursuant to a default judgment of divorce entered on May 21, 1987. In an order dated January 2, 1991, the circuit court granted plaintiff's motion to enforce the judgment and awarded plaintiff $22,999.34 as her share of the ESOP. Defendant's subsequent motions for relief from this order were denied, and he now appeals as of right. We affirm the decision of the trial court, but modify its award to plaintiff.

I

The facts of this case are relatively straightforward. On October 1, 1986, plaintiff Joann Applekamp (now Strancel), filed for divorce from her husband, defendant William Applekamp. Defendant failed to plead or otherwise defend the action,

and a default judgment of divorce was entered on May 21, 1987. The judgment, prepared by plaintiff's attorney, contained the following provision regarding distribution of the ESOP:

> It is further ordered and adjudged that the parties shall split the 1986 state and federal tax refunds, the anticipated Copper Range Profit Sharing or Escrow Payment, and the *anticipated Copper Range Stock Disbursement,* with each party to receive one-half (½) of each of the above items. Further, the defendant shall provide to the plaintiff proof as to the amounts received from each payment at the time of paying to the plaintiff her share. [Emphasis added.]

At the time of the divorce defendant had 188.23024 vested shares of Copper Range stock in his ESOP, at $24.40 a share. Thereafter, sometime in 1989, Copper Range Company was bought out by another company, and Copper Range employees voted to terminate the ESOP. Defendant's holdings in the ESOP at the time of the buy out were as follows:

> 188.23024 shares credit as of 12/31/86;
> 154.85511 shares credit as of 12/31/87;
> 152.65909 shares credit as of 12/31/88;
> 291.98244 shares of unallocated stock.

Pursuant to the purchase agreement, each employee received $84.38 a share. As a result, defendant received a payment of $66,468.40 for 767.72688 shares of Copper Range Company stock.

On August 15, 1989, plaintiff filed a motion to enforce the judgment, seeking to recover half of the $66,468.40 payment to defendant. Plaintiff claimed that she was entitled to this amount pursuant to the judgment of divorce, which

awarded her half of the "*anticipated* Copper Range stock disbursement." In response, defendant argued that plaintiff was entitled to only half of $4,592.81, the value of the vested stock in the ESOP at the time of the divorce.

Following a hearing, the trial court agreed in part with plaintiff and purported to award her half the value of the stock that had accrued by the date of the divorce, at the increased value of $84.38 a share. In pertinent part, the court's opinion reads as follows:

> The defendant argues that the plaintiff only should be entitled to one-half of the shares already issued by the defendant as of the date the divorce became final, at the then very low value placed upon the stock by the company as reflected on defendant's Exhibit 501-H and mentioned by the witness, Charles Lempke [sic]. The plaintiff contends consideration should be given to awarding her one-half of all of the stock eventually purchased at the much higher value as set forth on plaintiff's Exhibit 2-H.
>
> Based upon the evidence received by the court at the time of the hearing on the motion, and bearing in mind that a divorce action is equitable in nature, this court concludes the plaintiff is entitled to 50 percent of all stock issued to the defendant in 1986, 50 percent of all stock issued to the defendant in 1987 to the date the divorce became final, and with no indication as to exactly when the stock was received by the defendant and also bearing in mind the hearing was in late April and the judgment not signed until late May and by law a request could have been made for a new trial or other relief from the judgment an additional period of time into the month of June, the court concludes for computation purposes the plaintiff is entitled to one-half of the stock issued the defendant in 1987 but she is not entitled to any of the stock issued the defendant in 1988. As

to the unallocated shares, the court further concludes the plaintiff is entitled to the percentage of shares already awarded to her, which would be 34.6 percent of the unallocated shares. *The court also concludes that she should be entitled to the amount per share eventually realized by the defendant since fluctuations in value previously were only speculative and in equity the final figure actually paid per share result in a fair and equitable distribution of the stock in accordance with the judgment.* Again for the sake of brevity, the court adopts and incorporates by reference the figure set forth on plaintiff's Exhibit 4-H, and awards the plaintiff the sum of $22,999.34 together with interest thereon at the allowable legal rate provided for judgments from the date the funds actually were received by the defendant until paid to the plaintiff. [Emphasis added.]

II

On appeal, defendant claims that the valuation of the ESOP was in error. Specifically, defendant contends that the trial court committed an error of law when it failed to determine plaintiff's award solely on the basis of the value of the stock at the time of the divorce. In support of his position, defendant relies heavily on *Burkey v Burkey (On Rehearing),* 189 Mich App 72; 471 NW2d 631 (1991). In *Burkey,* this Court held that it was error for the trial court in a divorce action to refuse to value an ESOP account and include it as part of the marital estate. In so holding, the panel in *Burkey, id.* at 76, stated:

. . . The present value of an ESOP plan can be readily determined at any given time by looking at the value of the stock or other investments made by the plan. All that must be done to determine present value is to determine the number of

shares in the employee's account and multiply that figure by the value of those shares. Defendant in the case at bar was annually notified what number of shares were owned by her, their value, and, therefore, the value of the ESOP account itself.

The trial court correctly determined that the valuation reached by the trial court could not be dependent upon the happening of future events after the divorce. *Kilbride v Kilbride,* 172 Mich App 421, 435-436; 432 NW2d 324 (1988). Accordingly, the trial court ignored any changes which might occur to the ESOP after divorce, such as additional contributions and fluctuation in the price of the stock.

Upon review, we find the present case distinguishable from *Burkey. Burkey* controls where the valuation of an ESOP is contested. Additionally, we agree with *Burkey* that in the context of a contested proceeding, it is unwise public policy to order a property distribution that is based upon the occurrence of speculative future events. Where the trial court is called upon to distribute the property of the parties, the court must employ its equitable powers to fashion an award that is "fair and just." *Sparks v Sparks,* 440 Mich 141; 485 NW2d 893 (1992). Property distributions that are contingent upon the occurrence of uncertain future events call into question the fairness and equity of court-ordered decrees. Such concerns, however, are less salient when the property is distributed pursuant to the consent of the parties or by default. *Keyser v Keyser,* 182 Mich App 268; 451 NW2d 587 (1990), *Van Wagoner v Van Wagoner,* 131 Mich App 204; 346 NW2d 77 (1983), *Kline v Kline,* 92 Mich App 62; 284 NW2d 488 (1979), and *Tinkle v Tinkle,* 106 Mich App 423; 308 NW2d 241 (1981). As we have stated in the context of a property settlement:

The validity of property settlements reached through negotiations is generally upheld in the absence of fraud, duress, or mutual mistake. Consent judgments reached by agreement of the parties differ from litigated judgments reached after trial on the merits. The former primarily rest on the consent of the parties, rather than upon the judgment of the court, and generally cannot be set aside without the approval of the parties thereto. [*Madden v Madden,* 125 Mich App 54, 58-59; 336 NW2d 231 (1983), rev'd on other grounds 419 Mich 858 (1984).]

If the trial court had ordered the present award in a contested divorce, we might be constrained to find error.[1] Here, however, the judgment was entered by default. As noted by the trial court, defendant never obtained relief from the default.

Default judgments in divorce cases are governed by MCR 3.208(B)(1), MCR 2.603, and MCR 2.612. A party in default generally may not proceed with the action until the default has been set aside. *Michigan Bank-Midwest v D J Reynaert, Inc,* 165 Mich App 630, 648; 419 NW2d 439 (1988). By not obtaining relief from the judgment in this case, defendant was bound by its terms. In short, we agree with the trial court's observation that the postjudgment proceedings were limited solely to interpreting the "anticipated" language incorporated in the previous judgment of divorce. Furthermore, we are not persuaded by defendant's argument that the court's interpretation of the judg-

---

[1] We note, however, that there is language in *Burkey* that would appear to allow the ESOP to be valued at a future date:

The actual date to be used for valuation of an asset is within the discretion of the trial court. *Curylo v Curylo,* 104 Mich App 340, 351; 304 NW2d 575 (1981). In this case, the court used December 31, 1987, since neither party presented information to enable valuation of the stock in the ESOP as of a different date. [*Burkey, supra* at 76-77.]

ment ignored the plain meaning of the word "anticipated."

The lower court's award, however, must be modified. The court awarded plaintiff half the value of the stock for the entire year of 1987. The parties were married for only the first four months and three weeks of 1987. This error, in turn, affects the proportion of the unallocated shares to which plaintiff is entitled. Accounting for this error, the breakdown should have been as follows:

|  | Plaintiff | Defendant |
| --- | --- | --- |
| 12/31/86 Stock Layer (total 188.23024 shares) | 94.11512 | 94.11512 |
| 12/31/87 Stock Layer (total 154.85511 shares) plaintiff entitled to half of unvested shares through 5/21/87 | 29.91035 | 124.94476 |
| 12/31/88 Stock Layer (total 152.65909 shares) | 0 | 152.65909 |
| Total Vested Shares | 124.02547 shares | 371.71897 shares |
| Percent of Total | 25.01803% | 74.98197% |
| Proportionate Share of Unallocated Stock (291.98244) shares) | 73.04825 shares | 218.93419 shares |
| Total Shares | 197.07372 shares | 590.65316 shares |
| Value Per Share | $ 84.38 | $ 84.38 |
| Total Award | $16,629.08 | $49,839.32 |

In accordance with these calculations, we modify plaintiff's ESOP award from $22,999.34 to $16,629.08. In all other respects, the decision of the lower court is affirmed.

Affirmed as modified. No costs to either party.