NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0247n.06

Case No. 15-1793

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SCOTT ROWAN, next friend of George Rowan, | ) ) ) | **FILED** May 09, 2016 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED |
| v. | ) ) ) | STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| BROOKDALE SENIOR LIVING COMMUNITIES, INC., dba Wynwood of Portage, | ) ) ) ) | |
| Defendant-Appellee. | ) ) | |

BEFORE: KEITH, COOK, and McKEAGUE, Circuit Judges.

COOK, Circuit Judge. George Rowan, by Scott Rowan, his son and next friend, appeals the district court's order granting Brookdale Senior Living Communities, Inc.'s motion to compel arbitration and dismissing the case. Rowan contends the district court erred in discerning no genuine issue of material fact regarding the validity or the enforceability of the arbitration clause. Disagreeing, we AFFIRM.

I.

After a stroke diminished his physical and mental functioning, Rowan Sr. moved into an assisted-living facility operated by Brookdale. He struggled with this new living arrangement and one evening wandered from the facility to a nearby residential subdivision. He tripped and

fell on a resident's driveway, leaving him unable to move. Later that night, the resident pulled out of the driveway and ran him over, causing severe injuries. Rowan, his father's next friend, sued Brookdale for negligence, gross negligence, and fraud.

Brookdale moved to compel arbitration, citing the Residency Agreement that Rowan Sr. signed when he moved in. Rowan opposed arbitration, contesting the validity of the Residency Agreement on grounds that his father lacked mental competence to contract. And even if his father were competent when signing, Rowan said that various contract defenses would prevent enforcement of the arbitration clause. The district court granted Brookdale's motion to compel arbitration and dismissed the case, finding the evidence insufficient to raise a genuine issue of material fact regarding the validity or enforceability of the arbitration clause. This appeal followed.

## II.

As applicable here, before compelling arbitration a court must determine whether a valid arbitration agreement exists and whether the dispute falls within that agreement's scope. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). The Federal Arbitration Act (FAA) guides us in determining the validity of an arbitration agreement, reading in relevant part:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. "The party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate"—a standard "mirror[ing] that required to withstand

summary judgment in a civil suit." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129–30 (2d Cir. 1997)). The nonmoving party, here Rowan, may challenge an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Rowan raises on appeal the same two arguments he presented to the district court. We review de novo an order compelling arbitration, viewing all facts in the light most favorable to the nonmoving party and determining whether a reasonable fact finder could conclude from the presented evidence that no valid agreement to arbitrate exists. *See Great Earth Cos.*, 288 F.3d at 889 (citing *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999)).

## A. Contract Formation

Rowan asserts that his father lacked mental capacity to contract citing: his father's short-term memory problems before signing the Residency Agreement, his emotional and mental state after signing, and the circumstances of his wandering-off.

Rowan bears the burden of proving his father's lack of mental capacity to contract. *See Klein v. Kent*, 95 N.W.2d 864, 867 (Mich. 1959). To possess mental capacity to contract, Michigan law evaluates whether:

> [T]he person in question possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged. However, to avoid a contract it must appear not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that he had no reasonable perception of the nature or terms of the contract.

*Howard v. Howard*, 352 N.W.2d 280, 282 (Mich. Ct. App. 1984) (quoting *Van Wagoner v. Van Wagoner*, 346 N.W.2d 77, 81–82 (Mich. Ct. App. 1983)). Though capacity is determined at contract formation, a contracting party can rely on his condition before and after formation to

prove incapacity, and a "prior or subsequent condition may be presumed to exist at the time [of contract formation]." *Beattie v. Bower*, 287 N.W. 900, 903 (Mich. 1939).

First, Rowan argues that the short-term memory problems his father experienced before he signed the Residency Agreement demonstrate his incapacity to contract. But the evidence Rowan offers in support falls short. While Rowan's sister described her father's memory as "compromised," she also attested that she had no reservations regarding his contractual capacity around the time that he signed the Residency Agreement. Similarly, though a cognitive therapist doubted that Rowan Sr. "would have been able to recall the entire [Residency Agreement]" and "may have had some difficulty" interpreting its interrelated provisions, the therapist also expressed confidence in Rowan Sr.'s ability to "comprehend each section [of the Residency Agreement]." Neither the daughter's nor the therapist's testimony supports the proposition that Rowan Sr.'s memory deficiency was "of such a character that he had no reasonable perception of the nature or terms of the [Residency Agreement]." *See Howard*, 352 N.W.2d at 282.

Next, Rowan cites Dr. Kameswara Tatineni's conclusion that, after moving into the Brookdale facility, his father suffered from anxiety, depression, and limited insight/judgment as a result of either mild vascular dementia or delirium. Dr. Tatineni, however, did not assess competence. In fact, Dr. Tatineni expressed no opinion on Rowan Sr.'s ability to read and understand the Residency Agreement.

Finally, Rowan contends that because his father wandered from Brookdale's facility previously and needed extra supervision the day prior to his injury, a fact finder could infer incapacity to contract. Yet the Michigan Department of Human Services reported that the incident "could not have [been] reasonably expected," and grounded its conclusion in part on an assessment finding Rowan Sr. "capable of independent decision making," "oriented to person,

place and time," and able to communicate effectively. In any event, Rowan's conclusory assertion that the circumstances of his father's injury evidence incapacity is insufficient to withstand summary judgment. *See, e.g.*, *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (noting that "mere speculation, conjecture, or fantasy" cannot overcome a summary-judgment motion).

That Rowan Sr. executed at least five legal documents in the month before he moved into the Brookdale facility also counsels against finding incapacity. For example, he signed a durable power of attorney for health-care purposes—a single-spaced, nine-page document—and another for financial purposes—a single-spaced, twelve-page document. Plus, he also signed two personal protection orders as well as a verified complaint for divorce. No one has challenged his mental capacity regarding these signings. Indeed, one of the documents includes an attorney's and a doctor's sworn declarations that Rowan Sr. appeared to be of sound mind.

Accordingly, drawing all reasonable inferences in Rowan's favor, we discern no genuine issue of material fact regarding whether Rowan's father lacked a reasonable perception of the nature or terms of the Residency Agreement.

## B. Enforceability of the Arbitration Clause

Even if his father possessed contractual capacity, Rowan continues, the arbitration clause is unenforceable because it: (1) violates public policy, (2) lacks mutual assent, (3) needs consideration, (4) fails to provide a knowing and voluntary waiver of his father's jury-trial right, and (5) imposes a financial burden. State law "governs 'generally applicable contract defenses to an arbitration clause.'" *Great Earth Cos.*, 288 F.3d at 889 (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)) (brackets omitted). We address each defense in turn.

### 1. Void for Public Policy

Rowan claims that the arbitration clause violates Michigan public policy by waiving jury-trial rights secured by Michigan's Truth in Renting Act, Mich. Comp. Laws § 554.633(1)(f), and by limiting liability for gross negligence, thereby promoting elder abuse. Though Michigan invalidates contracts that violate public policy, *Michelson v. Voison*, 658 N.W.2d 188, 190 (Mich. Ct. App. 2003), Rowan's argument fails for two reasons. First, to the extent Rowan contends that provisions in the Residency Agreement aside from the arbitration clause violate Michigan law, those issues are reserved for arbitration. *See Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 628 (6th Cir. 2004) ("One seeking to challenge an arbitration clause must make an argument that is specific to the arbitration clause . . . and . . . does not simply challenge the contractual obligation to which the arbitration clause applies." (citing *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 491 (6th Cir. 2001))). Second, though Rowan argues that the arbitration clause violates Michigan's prohibition on arbitration in the residential context, the Federal Arbitration Act emphatically favors arbitration and displaces conflicting state statutes or policies. *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203 (2012) (per curiam) (citations omitted).

### 2. Lack of Mutual Assent

Next, Rowan alleges that the arbitration clause lacked mutual assent because Brookdale failed to allow his father an opportunity to read the agreement at signing. True, contract formation requires mutual assent on all essential terms. *See Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003). But Michigan law "presumes that one who signs a written agreement knows the nature of the instrument," *Watts v. Polaczyk*, 619 N.W.2d 714, 717 (Mich. Ct. App. 2000), and a signatory "will not be heard to say, when

enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Farm Bureau Mut. Ins. Co. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999) (quoting *Komraus Plumbing & Heating, Inc. v. Cadillac Sands Motel, Inc.*, 195 N.W.2d 865, 868 (Mich. 1972)).

In any event, Rowan fails to counter Brookdale's evidence that it provided his father a copy of the Residency Agreement in advance of signing. Indeed, Rowan Sr. toured a number of residential facilities with his ex-wife prior to selecting the Brookdale facility. When potential residents visit, Brookdale provides them an informational packet that includes a copy of the Residency Agreement along with a physician's plan of care. Rowan Sr. had a physician complete the plan of care three days before signing the Residency Agreement, suggesting that he received the packet with the Residency Agreement in advance of signing.

### 3. *Want of Consideration*

Pushing on, Rowan argues that the arbitration clause lacks consideration. But "the basic rule of contract law is that whatever consideration is paid for all the promises is consideration for each one." *Rowady v. K Mart Corp.*, 428 N.W.2d 22, 25 (Mich. Ct. App. 1988). Here, there was a bargained-for exchange: Rowan Sr. paid money to Brookdale for housing and other services, and both agreed to arbitrate disputes.

### 4. *Waiver of Jury-Trial Right*

Rowan further challenges the enforceability of the arbitration clause because it lacks comprehensible language, and urges the court to apply *Morrison v. Circuit City Stores, Inc.*'s test to evaluate whether his father knowingly and voluntarily waived his jury-trial right. 317 F.3d 646, 668 (6th Cir. 2003) (en banc). *Morrison* is inapplicable, however, because it is limited "to the validity of arbitration clauses in employment agreements where an employee's statutorily created federal civil rights are at issue." *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th

Cir. 2006). Regardless, the arbitration clause here is clear: it twice states in bold, "The parties to this Agreement further understand that a jury will not decide their case," and the immediately following section reads—using capital letters, bolding, and underlining—"waiver of trial by jury."

### 5. *Imposition of Financial Burden*

Finally, Rowan argues against enforceability on the grounds that the arbitration clause imposes an impermissible financial burden upon his father and others similarly situated in violation of *Morrison*, 317 F.3d at 646. *Morrison*, again, is inapposite. Furthermore, Rowan fails to explain how the arbitration clause imposes intolerable costs.

III.

For these reasons, we AFFIRM the district court's order.