*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD GRAHAM,

      Plaintiff/Counterdefendant-Appellant,

v

EDWARD MCPHAIL, RONALD CLIFFORD
MCPHAIL, and JAMES MCPHAIL,

      Defendants/Counterplaintiffs-
      Appellees.

UNPUBLISHED
April 14, 2022

No. 355892
St. Clair Circuit Court
LC No. 19-002221-CH

Before: RONAYNE KRAUSE, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Plaintiff/Counterdefendant Ronald Graham appeals as of right the trial court's order determining his easement across defendant's property was a certain dirt roadway. In the trial court, the parties—neighbors with adjoining properties—clashed over which of two driveways was plaintiff's easement. After a bench trial, the trial court concluded defendants/counterplaintiffs, Edward McPhail, Ronald McPhail, and James McPhail, were correct about the easement's location. On appeal, plaintiff argues the trial court's conclusion about the easement's location was clear error, and that the trial court abused its discretion by denying his motion for a new trial or relief from judgment, and by denying his request for an evidentiary hearing. We affirm.

## I. FACTS

A one-day bench trial was held to resolve this property dispute. Plaintiff's lot was landlocked, and at trial plaintiff argued his easement to access the highway, Bryce Road, was a gravel driveway ("the Gravel Drive"). Defendants argued plaintiff's easement was a two-track dirt trail that wound through the woods on defendants' property ("the West Drive").

In May of 1972, members of defendants' family were deeded the back half of a parent parcel of land (the McPhails' lot). The McPhails' lot did not have access to Bryce Road, and so their deed provided an easement over the front half of the parent lot to access Bryce Road. The deed described the easement as "an easement over and across the lands of the grantors in a North

-1-

and South direction same being an existing roadway from [B]ryce Road to the lands of the grantees, approximately 20 feet wide to be used for ingress and egress to the lands herein granted."

About 10 years later, defendants' family created a new lot in the southeast corner of their lot. This would become plaintiff's lot. The deed provided plaintiff's lot an easement, and the deed described the easement the same way the McPhails' 1972 deed described the McPhails' lot's easement: "an easement over and across the lands of the grantors in a North and South direction same being an existing roadway from Bryce Road to the lands of the grantees, approximately 20 feet wide to be used for ingress and egress to the lands herein granted." Each subsequent deed in the chain of title to plaintiff's lot—including plaintiff's own deed—described the easement using essentially this same language.

When plaintiff first moved in to his lot in 2019, he began using the West Drive to access his lot. But eventually, plaintiff came to believe the Gravel Drive was the easement described in his deed. Plaintiff sued defendants for trespass and nuisance, alleging the Gravel Drive was his easement and defendants were interfering with his right to use it.

At the bench trial, Ronald McPhail indicated that when the McPhails moved onto their lot in 1972, the Gravel Drive did not exist yet—only the West Drive did. Specifically, Ronald testified his father put in the Gravel Drive a few years after 1972. Also, Ronald testified that only the West Drive connected to plaintiff's lot, as the Gravel Drive never connected to plaintiff's lot. He testified all his family members who had lived on plaintiff's lot before plaintiff, used the West Drive to access plaintiff's lot. According to Ronald, defendants used the Gravel Drive only with the business they run on their lot. Bolstering Ronald's testimony on whether the Gravel Drive connected with plaintiff's lot were photographs showing a grassy field separated plaintiff's lot from the Gravel Drive. In that grassy field, defendants store semitruck trailers and other equipment, effectively blocking plaintiff's lot's access to the Gravel Drive.

Plaintiff offered no evidence to controvert Ronald's testimony that only the West Drive existed at the time the McPhails received the deed to their lot. But plaintiff did offer evidence controverting Ronald's testimony about whether the Gravel Drive connected to plaintiff's lot. Harold Smith, plaintiff's friend, testified he dug up gravel in the grassy field between plaintiff's lot and the Gravel Drive. Plaintiff also introduced aerial photographs from 1990, 1995, and 2000 showing the Gravel Drive used to connect with plaintiff's lot.

After the bench trial, the trial court concluded the evidence showed the West Drive was the easement described in plaintiff's deed, and plaintiff failed to prove otherwise. First, the trial court found the Gravel Drive never connected with plaintiff's property:

> Plaintiff presented no physical evidence that the gravel driveway ever ran directly to his property. Photographs admitted into evidence suggest just the opposite—that the gravel driveway ends on Defendants' business property; that Defendants store trucks in a grassy and somewhat overgrown area beyond where the gravel driveway ends; that a fence separated Defendants; and Plaintiff's property when Plaintiff purchased his.

Second, relying on Ronald's testimony, the trial court found the description of the easement in the McPhails' 1972 deed could not be referring to the Gravel Drive. And because all the deeds in plaintiff's lot's chain of title used the same description, it followed those deeds also could not be referring to the Gravel Drive:

> Most convincing to this Court is the date on which the gravel driveway was installed. Defendants presented uncontroverted testimony that Defendant Ronald McPhail's father installed the gravel driveway to the business in 1977, years after the easement granting access to Plaintiff's property had been established. That testimony established that the gravel driveway could not have been the easement described in the instruments of conveyance, as it did not even exist when the easement was first granted.

The trial court entered a judgment declaring the West Drive was plaintiff's easement.

Plaintiff moved for a new trial or relief from judgment under MCR 2.611(A)(1)(b) or (A)(1)(h), arguing that Ronald had perjured himself. To prove Ronald perjured himself, plaintiff attached to his motion evidence that neither party introduced at trial, including a 1964 aerial photograph which plaintiff alleged showed the Gravel Drive existed as early as 1964. He also attached aerial photographs from the 1980s showing the Gravel Drive connecting with plaintiff's lot. Finally, plaintiff provided a "Surveyor's Opinion," which stated that the Gravel Drive was in fact the intended easement and that the driveway in the 1964 aerial photograph was in the same location as the Gravel Drive is today. Based on this evidence, plaintiff opined, he was at least entitled to an evidentiary hearing on whether Ronald committed fraud or misrepresentation.

Defendants opposed plaintiff's motion, arguing plaintiff's new evidence did not show Ronald lied. Implicitly conceding that a driveway had always existed in the same location as the Gravel Drive, defendants argued Ronald intended to say his father laid down gravel on top of this path after the McPhail family took possession. Ronald did not mean his father forged a new path. Also, defendants noted plaintiff could have produced this evidence at trial, but failed to do so. Finally, defendants argued—even if authentic—plaintiff's 1964 aerial photograph did not prove the West Drive did not exist in 1964. To support this argument, defendants attached a 1956 aerial photograph they claimed showed the West Drive.

The trial court denied plaintiff's motion and request for an evidentiary hearing. First, the trial court stated that "there [was] no way on earth [it] believe[d]" Ronald had been lying. Second, the trial court noted plaintiff had ample opportunity to present this evidence at trial but failed to do so. Third, the trial court explained Ronald's testimony about the Gravel Drive's being put in after 1972, was not the only evidence relied upon. This appeal followed.

## I. FINDINGS OF FACT

Plaintiff first argues the trial court clearly erred in finding that the West Drive was the easement described in his deed.

"The circuit court's findings of fact, if any, following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013). "The extent of a party's right under an easement is a

question of fact." *Dobie v Morrison*, 227 Mich App 536, 541; 575 NW2d 817 (1998). Accordingly, we review a trial court's determination of the parties' respective rights under an easement for clear error. *Id.* "The clear error standard provides that factual findings are clearly erroneous where there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake." *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007) (citation omitted).

"The language of an express easement is interpreted according to rules similar to those used for the interpretation of contracts." *Wiggins v City of Burton*, 291 Mich App 532, 551-552; 805 NW2d 517 (2011) (citations omitted). In interpreting language describing an easement, a court's goal should be to enforce the true intent of the parties at the time the easement was created. *Id.* "Courts should begin by examining the plain language of the easement, itself. If the language of the easement is clear, it is to be enforced as written and no further inquiry is permitted." *Id.* (citation and internal quotation marks omitted). But if the meaning of the language is uncertain or ambiguous, a court may consider extrinsic evidence of the parties' intent. See *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). "An ambiguity may either be patent or latent." *Shay*, 487 Mich at 667. A patent ambiguity is apparent from the face of the document, while a latent ambiguity is not readily apparent from the document's language, but "instead arises from a collateral matter when the document's terms are applied or executed." *Id.*

The description of plaintiff's lot's easement in these deeds provides four characteristics about the easement: (1) it is an existing roadway or driveway over and across defendants' land; (2) it proceeds in a north and south direction; (3) it runs from Bryce Road to plaintiff's lot; and (4) it is approximately 20 feet wide.

Plaintiff contends only the Gravel Drive has all four of these characteristics. Specifically, plaintiff argues only the Gravel Drive travels in a straight line from north to south and only the Gravel Drive is 20 feet wide. While plaintiff is correct that the West Drive twists and turns as it runs its course, this does not mean it does not travel in a north to south direction. All aerial photographs introduced at trial show the West Drive runs south from Bryce Road and ends when it reaches plaintiff's lot. Thus, the West Drive proceeds in a north to south direction. Also, while plaintiff and Smith did testify that the West Drive was only 8 to 10 feet wide, the trial court was not obligated to find this testimony credible. See MCR 2.613(C) and *SP v BEK*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos. 353984;353992); slip op at 3 ("[T]he trier of fact has the advantage of being able to consider the demeanor of the witnesses in determining how much weight and credibility to accord their testimony.") (citation omitted). Additionally, aerial photographs introduced at trial show, in many areas, the width of both driveways was about the same. We can discern no clear error on either point.

Plaintiff does correctly argue that the trial court clearly erred in finding the Gravel Drive never ran to plaintiff's property, as plaintiff's 1990, 1995, and 2000 aerial photographs plainly depict the Gravel Drive running all the way through to plaintiff's property. Nonetheless, this does not render clearly erroneous the trial court's ultimate factual finding that the West Drive was the intended easement. Even if the Gravel Drive did, at some point in time, run all the way to plaintiff's lot, defendants still presented unrefuted evidence that occupants of plaintiff's lot always used the West Drive rather than the Gravel Drive. Ronald and James testified defendants only

used the Gravel Drive to access their business. James also testified that his niece resided on plaintiff's property and she exclusively used the West Drive to access it. Even more, plaintiff testified he used the West Drive to access his property for the first six months he resided there. In short, even if the trial court failed to determine that the Gravel Drive once ran all the way to plaintiff's property, this did not render erroneous its finding the original grantor and grantee intended the West Drive to be the easement. Any error was not decisive to the outcome of the case, and was harmless. MCR 2.613(A); *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 529; 730 NW2d 481 (2007) (citation omitted).

We also reject plaintiff's final two arguments challenging the trial court's opinion. First, plaintiff argues that a 1997 survey of the lots next to Bryce Road showed that the Gravel Drive was the easement. However, land surveyor James Gorinac testified this 1997 survey did not specify whether it depicted the West Drive or the Gravel Drive as the easement, and the survey's purpose was not to determine the location of the easement. Hence, the 1997 survey was not irrefutable proof the Gravel Drive was the easement. Second, plaintiff argues the trial court erred by considering a certain corrective special warranty deed purporting to amend the description of the easement in plaintiff's deed, because this deed was null as plaintiff did not sign it. Nothing in the trial court's written opinion, however, suggests the corrective special warranty deed was relevant to its legal analysis. While the trial court acknowledged the existence of the corrective special warranty deed, it did not mention that deed in its opinion and decision. At any rate, plaintiff cites no authority stating, to be valid, a correction to a deed requires the signature of the grantee.

In sum, the trial court did not clearly err in concluding the West Drive was the easement described in his deed.

## II. MOTION FOR NEW TRIAL OR RELIEF FROM JUDGMENT

Next, plaintiff argues the trial court abused its discretion in denying his motion for new trial or for relief from judgment. Further, he argues the trial court abused its discretion by failing to hold an evidentiary hearing on his claim Ronald committed perjury.

"Whether to grant or deny a motion for a new trial is entrusted to a trial court's discretion, which requires appellate review to be for an abuse of that discretion." *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 682; 630 NW2d 356 (2001). Likewise, a trial court's decision on motion for relief from judgment is reviewed for an abuse of discretion. *Yee v Shiawassee City Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002). And a "trial court's decision that an evidentiary hearing is not warranted is reviewed for an abuse of discretion." *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). An abuse of discretion occurs when a trial court selects an outcome falling outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

A motion for new trial or relief from judgment is governed by MCR 2.611(A)(1)(b) and (h). In relevant part, MCR 2.611 states:

> (A)(1) A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

* * *

(b) Misconduct of the jury or of the prevailing party.

* * *

(h) A ground listed in MCR 2.612 warranting a new trial.

* * *

(f) Material evidence, newly discovered, which could not with reasonable diligence have been discovered and produced at trial.

MCR 2.612(C)(1)(c) states:

(1) On motion and on just terms, the court may relief a part or the legal representative of a part from a final judgment, order, or proceeding on the following grounds:

* * *

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

While defendant characterizes his motion as based on a witness's fraud, misconduct, or misrepresentation; in reality, his motion is on the basis of newly discovered evidence. After all, plaintiff's argument Ronald perjured himself is dependent on the evidence attached to plaintiff's motion—none of which was introduced at trial. For this reason, we consider plaintiff's motion to be a motion for new trial under MCR 2.611(A)(1)(f), or motion from relief from judgment under MCR 2.612(C)(1)(b). See *Stallworth v Hazel*, 167 Mich App 345, 353; 421 NW2d 685 (1988) (treating motion for new trial based on a witness's perjury as a motion for a new trial based on new evidence because whether witness committed perjury was dependent on new evidence).

To show entitlement to postjudgment relief based on newly discovered evidence, a party must show four things:

(1) the evidence, not simply its materiality, must be newly discovered, (2) the evidence must not be merely cumulative, (3) the newly discovered evidence must be such that it is likely to change the result, and (4) the party moving for relief from judgment must be found to have not been able to produce the evidence with reasonable diligence. [*South Macomb Disposal Auth v American Ins Co*, 243 Mich App 647, 655-656; 625 NW2d 40 (2000) (citation omitted)].

Even if we assume plaintiff met the first three requirements, there is no explanation for why he could not have produced at trial the aerial photographs and the Surveyor's Opinion with the exercise of reasonable diligence. And there is nothing in the record to suggest plaintiff was obstructed from producing this evidence previously. As a result, the trial court did not abuse its discretion in denying plaintiff's motion for new trial or relief from judgment.

Even so, plaintiff argues, he is still entitled to an evidentiary hearing on his fraud allegations. In support of this argument, plaintiff directs us to our caselaw holding it is generally an abuse of discretion for a trial court to decide a postjudgment motion alleging fraud without first holding an evidentiary hearing. See *Yee*, 251 Mich App at 405, quoting *Rapaport v Rapaport*, 185 Mich App 12, 16; 460 NW2d 588 (1990).

While plaintiff correctly states the law, this rule does not require a trial court to always hold an evidentiary hearing involving the presentation of witnesses, etc. *Williams v Williams*, 214 Mich App 391, 396-397; 542 NW2d 892 (1995). In *Williams*, instead of holding a typical evidentiary hearing, the trial court ordered the parties to depose the relevant witnesses and then to present to the trial court their respective arguments based on those depositions. We held that this satisfied the evidentiary hearing requirement. In reaching this holding, we cited MCR 2.119(E)(2), which states:

> When a motion is based on facts not appearing of record, the court may hear the motion on affidavits presented by the parties, or may direct that the motion be heard wholly or partly on oral testimony or deposition. [*Williams*, 214 Mich App at 394.]

We also relied on *Mich Bank-Midwest v DJ Reynaert, Inc*, 165 Mich App 630; 419 NW2d 439 (1988), where this Court held a trial court did not abuse its discretion in declining to hold an evidentiary hearing because undisputed evidence showed a party failed to disclosed a material fact to the trial court. *Williams*, 214 Mich App at 396-397, citing *Mich Bank-Midwest*, 165 Mich App at 642-643.

Applying *Williams*, we conclude the trial court's allowing plaintiff and defendants to attach documentary evidence to their postjudgment filings satisfied the evidentiary hearing requirement. While the trial court here decided the issue based on documentary evidence rather than deposition testimony or affidavits, *Williams* holds a trial court has the discretion to determine what type of evidentiary hearing the circumstances call for:

> While recognizing that the level of proof relating to allegations of fraud is "of the highest order," we believe that the trial court itself is best equipped to decide whether the positions of the parties (as defined by the motion and response, as well as by the background of the litigation) mandate a judicial assessment of the demeanor of particular witnesses in order to assess credibility as part of the fact-finding process. Some motions undoubtedly will require such an assessment, e.g., situations in which "swearing contests" between two or more witnesses are involved, with no externally analyzable indicia of truth. Other motions will not, e.g., situations in which ascertainable material facts are alleged, such as the contents of a bank account on a particular day. Where the truth of fraud allegations can be determined without reference to demeanor, we do not believe that the law requires a trial court to devote its limited resources to an in-person hearing. [*Williams*, 214 Mich App at 399].

We conclude the trial court did not abuse its discretion in finding the circumstances did not call for a formal hearing. As was the case in *Mich Bank-Midwest*, the documentary evidence here left open no question of fact. The aerial photographs plaintiff and defendant submitted

postjudgment (assuming they are authentic) show that the Gravel Drive (regardless if it was covered with gravel) existed prior to 1979.[1] The aerial photographs show the Gravel Drive existed as early as 1956[2], and extended all the way to plaintiff's property. Given this documentary evidence left open no question of fact, it is unclear why a more formal evidentiary hearing would be necessary. While a more formal hearing would presumably give the trial court opportunity to assess Ronald's credibility in response to plaintiff's allegations of perjury, the trial court already had the opportunity to observe Ronald's credibility at trial. And plaintiff has not explained what he would hope to discover or flush out at a more formal hearing. Simply put, the trial court had undisputed facts before it when deciding whether a new trial or vacation of judgment was necessary, and a decision that a more formal evidentiary hearing under these circumstances was unnecessary was not an abuse of discretion.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Michael J. Kelly

---

[1] Defendants argue the 1964 aerial photograph is consistent with Ronald's testimony because, according to defendants, Ronald testified his father put gravel down on an already existing dirt drive—not that his father created the Gravel Drive. While it may be plausible to characterize Ronald's testimony to be that his father *created* the Gravel Drive in 1979, the trial court specifically stated it viewed Ronald's testimony to be that the *gravel* was placed on the road by his father in 1979.

[2] Defendants provided a 1956 aerial photograph showing the West Drive existed in 1956, but it also depicts the Gravel Drive, reinforcing the assertion that the Gravel Drive existed before 1979.